979 F.2d 1444
 Prod.Liab.Rep. (CCH) P 13,364
Doris J. ROMERO, Plaintiff-Appellee,
v.
INTERNATIONAL HARVESTER COMPANY, a Delaware corporation, Defendant,
and
Navistar International Transportation Corporation,
Defendant-Appellant.
Product Liability Advisory Council, Inc., Amicus Curiae.
 No. 91-1223.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 18, 1992.
 
 Michael E. Oldham of Johnson, Oldham & Angell, P.C., Denver, Colo. (Karen L. Smith of Johnson, Oldham & Angell, P.C., Denver, Colo., Elliott D. Olson and Ray G. Weatherup of Haight, Brown & Bonesteel, Santa Monica, Cal., with him on the briefs) for defendant-appellant.
 John Gehlhausen (J. Gregory McAuliffe, with him on the brief), of John Gehlhausen, P.C., Lamar, Colo., for plaintiff-appellee.
 Hildy Bowbeer and John D. Sear of Bowman and Brooke, Minneapolis, Minn., on the brief, for amicus curiae.
 Before ANDERSON, GIBSON,* and McWILLIAMS, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Defendant/appellant Navistar International Transportation Corporation ("Navistar"), formerly International Harvester Company, appeals from an order of the United States District Court for the District of Colorado denying its motion for judgment notwithstanding the verdict or, alternatively, for a new trial in this products liability case. We hold that, under Colorado law, a manufacturer has no duty to notify previous purchasers of its products about later-developed safety devices, or to retrofit those products when the products were non-defective under standards existing at the time of manufacture. We further conclude that the jury in this case was misinstructed as to the nature of the manufacturer's duty under Colorado law with respect to later-developed safety devices. We do not, however, remand for a new trial. Because the jury determined that the product in question, a tractor, was non-defective at the time of manufacture, we reverse and remand for entry of judgment for Navistar.
 
 
 2
 Plaintiff/appellee Doris Romero is the widow of Reidecel Romero, a farm worker who was killed on June 29, 1988, when the 1963 International Harvester 706D tractor on which he was sitting rolled over as Mr. Romero and his foreman attempted to tow the tractor out of a ditch. Ms. Romero brought this action under the Colorado Wrongful Death Statute, arguing that Navistar was negligent and/or strictly liable for failing to design the tractor with a roll bar or Roll Over Protective Structure ("ROPS") which would have prevented her husband's death, and that Navistar was negligent in failing to see that the tractor was retrofitted with a ROPS at some point after it was first sold. She also claimed Navistar was negligent and/or strictly liable for failing to warn users of the tractor of the dangers of use without a roll bar or ROPS.
 
 
 3
 Navistar argued that the tractor was reasonably safe and met all industry and governmental standards when it was manufactured and sold in 1963, and asserted as affirmative defenses comparative fault and misuse. Navistar's motion for summary judgment was denied, as was its motion for a directed verdict, and the case was tried to a jury on all claims except the failure to warn claim.[1] By means of special interrogatories, the jury returned a verdict for Navistar on the claims of negligent design and strict liability defective design, but for Ms. Romero on the claim of negligent "failure to exercise reasonable care to see that the tractor was retrofitted with a protective roll guard." It awarded damages of $200,000 and apportioned fault as follows: 5% to Mr. Romero; 35% to Navistar; 18% to Gerald Maestas, Mr. Romero's foreman; and 42% to Reyher Enterprises, Mr. Romero's employer. Judgment was accordingly entered against Navistar for $70,000. The court thereafter denied Navistar's special motion for judgment n.o.v. on the retrofit issue, and then denied its combined motion for judgment n.o.v. or for a new trial. This appeal by Navistar followed.
 
 BACKGROUND
 
 4
 The tractor in question was manufactured and sold to its first owner in 1963. It was subsequently bought by someone else in 1971, and then by Reyher Enterprises, Mr. Romero's employer, in 1983. When it was manufactured, without a roll bar or ROPS, no one disputes that it met all governmental standards applicable to farm tractors. Navistar and the John Deere Company began developing a ROPS system in the early 1960s. Deere introduced an optional ROPS for farm tractors in 1966, and Navistar did in 1967. Specifically, a ROPS was available for the 706D model tractor in 1967 as an optional field attachment. The American Society of Agricultural Engineers ("ASAE") did not make it mandatory to install ROPS on new farm tractors until 1985. The Occupational Safety and Health Administration did not adopt regulations requiring ROPS on new tractors until 1976. There was never a regulation or industry standard requiring that older tractors be retrofitted with a roll bar or ROPS.
 
 
 5
 Lusty Reyher, the owner of the tractor in question and the vice president of Reyher Enterprises at the time, had hired Mr. Romero as a seasonal employee in March, 1988. Mr. Romero had been working on the tractor on the day before his death, and had gotten it stuck in a ditch. The fatal accident occurred when Mr. Maestas, Mr. Romero's foreman, attempted to tow the tractor out of the ditch with a rope and chain, while Mr. Romero sat atop the tractor. The rope broke, causing the tractor to roll over backward and crush Mr. Romero. No one disputes that a roll bar or ROPS would likely have prevented Mr. Romero's death. No one argues that any defect in the tractor caused the rollover.
 
 
 6
 The jury was given, inter alia, the following jury instruction:
 
 
 7
 In order for the Plaintiff, Judy Romero, to recover from the Defendant, Navistar International Transportation Corporation, on her claim of sale of a defective product, you must find all the following have been proved by a preponderance of the evidence:
 
 
 8
 1. The Defendant was a manufacturer of the 706D tractor;
 
 
 9
 2. The Defendant was engaged in the business of selling such 706D tractor for resale, use or consumption;
 
 
 10
 3. The Defendant sold the 706D tractor;
 
 
 11
 4. The 706D tractor was defective and, because of the defect, the 706D tractor was unreasonably dangerous to a person who might reasonably be expected to use, consume, or be affected by the 706D tractor;
 
 
 12
 5. The 706D tractor was defective at the time it was sold by the Defendant or left its control;
 
 
 13
 6. The 706D tractor was expected to reach the user or consumer without substantial change in the condition in which it was sold;
 
 
 14
 7. The 706D tractor did reach the user or consumer without substantial change in the condition in which it was sold;
 
 
 15
 8. The Plaintiff's husband was a person who would reasonably be expected to use, consume, or be affected by the 706D tractor;
 
 9. The Plaintiff incurred damages; and
 
 16
 10. The defect in the 706D tractor was a cause of the Plaintiff's damages.
 
 
 17
 Appellant's Opening Brief, Appendix Vol. IV at 644-45. The jury was also instructed on the elements of Ms. Romero's negligent design claim, as follows:
 
 
 18
 In order for the Plaintiff, Judy Romero, to recover from the Defendant, Navistar International Transportation Corporation, on her claim of negligence, you must find all of the following have been proved by a preponderance of the evidence:
 
 
 19
 1. The Defendant manufactured the 706D tractor;
 
 
 20
 2. The Defendant was negligent in manufacturing the 706D tractor in that the defendant failed to exercise reasonable care to prevent the 706D tractor from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use the 706D tractor while it was being used in the manner the Defendant might reasonably have expected;3. The Plaintiff's husband was one of those persons the Defendant should reasonably have expected to use the 706D tractor; and
 
 
 21
 4. The Plaintiff's husband, Reidecel Romero's, death was caused by the Defendant's negligence while the 706D tractor was being used in a manner the Defendant reasonably should have expected.
 
 
 22
 Id. at 648. The jury was further instructed, over Navistar's objection, as follows:
 
 
 23
 A manufacturer has a continuing duty to use reasonable care to protect the users of its products from dangers which it knew or should have known about. The manufacturer is required to keep informed about its products from research, accident reports, scientific literature and other sources, reasonably available to it, and to use reasonable methods to advise the users concerning hazards which the manufacturer learns about during the expected useful life of the product.
 
 Id. at 653.[2]
 
 24
 Finally, the jury answered the following special interrogatories:
 
 
 25
 1. Do you find that the plaintiff, Doris J. Romero, is entitled to recover damages from the defendant, Navistar International Transportation Corporation, on her claim of strict liability because the product was defective and unreasonably dangerous at the time it was manufactured because the defendant failed to install a protective roll guard thereon at the time of manufacture?
 
 
 26
 2. Do you find that the plaintiff, Doris J. Romero, is entitled to recover damages from the defendant, Navistar International Transportation Corporation, on her claim of negligence from failure to install on the tractor at the time of manufacture a protective roll guard?
 
 
 27
 3. Do you find that the plaintiff, Doris J. Romero, is entitled to recover damages from the defendant, Navistar International Transportation Corporation, on her claim of negligence for failure to exercise reasonable care to see that the tractor was retrofitted with a protective roll guard?
 
 
 28
 Id. at 682. The jury answered "no" to interrogatories 1 and 2, and "yes" to interrogatory 3.
 
 
 29
 Navistar raises a multitude of issues on appeal. The first and critical issue is whether the district court properly instructed the jury with respect to the duty, under Colorado law, to warn previous purchasers of products of recently discovered defects in those products and/or newly developed safety devices for those products. A related, and equally critical, issue is whether the court erred in denying Navistar's motion for judgment n.o.v. on the retrofit claim, when the jury responded "no" to special interrogatories 1 and 2, thereby finding that the tractor was neither negligently designed nor defective and unreasonably dangerous when it was manufactured in 1963. Because we conclude that the court erred on both those issues, thereby rendering the verdict for Ms. Romero on her retrofit claim erroneous as a matter of law, we must reverse the denial of Navistar's motion for judgment n.o.v. and direct that judgment be entered in favor of Navistar.
 
 DISCUSSION
 
 30
 In this diversity products liability case, we must " 'ascertain and apply Colorado law [with the objective] that the result obtained in the federal court [should be] the result that would [be] reached ... in a Colorado court.' " Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992) (quoting Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991)); Black v. Hieb's Enters., Inc., 805 F.2d 360, 363 (10th Cir.1986). We review de novo any of the district court's rulings with respect to state law. See Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); Adams-Arapahoe School Dist. No. 28-J, 959 F.2d at 871; Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 n. 7 (10th Cir.1991).
 
 
 31
 While Colorado provides the substantive law governing the case, federal law provides the standards for reviewing the grant or denial of a judgment n.o.v. and a new trial. Suggs v. State Farm Fire & Cas. Co., 833 F.2d 883, 887 n. 5 (10th Cir.1987), cert. denied, 486 U.S. 1007, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). " 'We review de novo the denial of a motion for judgment [n.o.v.], applying the same standard of review as that used by the district court.' " Mason v. Texaco, Inc., 948 F.2d 1546, 1554 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992) (quoting Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991)). When so doing, we must "view the evidence, together with the inferences therefrom, in the light most favorable to the jury's verdict." Wheeler v. John Deere Co., 935 F.2d 1090, 1103 (10th Cir.1991); see also Adams-Arapahoe School Dist. No. 28-J, 959 F.2d at 873. The ultimate question is "whether there is evidence upon which the jury could properly find a verdict for the party [against whom the motion is directed]." Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498-99 (10th Cir.1984). We review for an abuse of discretion the district court's determination not to grant a new trial. Mason, 948 F.2d at 1555.
 
 
 32
 Navistar challenged certain jury instructions given by the district court. "In reviewing the adequacy of jury instructions, we consider the instructions as a whole. We do not inquire whether the instructions were faultless in every particular respect; rather ' "[t]he test is ... whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." ' " Wheeler v. John Deere Co., 935 F.2d at 1102 (quoting Menne v. Celotex Corp., 861 F.2d 1453, 1470-71 (10th Cir.1988) (quoting Borel v. Fibreboard Paper Prod. Corp., 493 F.2d 1076, 1100 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974))) (other citation omitted).
 
 
 33
 We consider first the nature of the duty, if any, which Colorado imposes on manufacturers to warn users of previously sold products about newly discovered defects in those products and/or newly developed safety devices. The central case in Colorado on the post-sale duty to warn, and the case on which the district court relied, is Downing v. Overhead Door Corp., 707 P.2d 1027 (Colo.App.1985).[3] In Downing, the defendant manufacturer made and sold a garage door opener, the activator button of which was placed within reach of children. Upon realizing the danger associated with the button placement, the manufacturer began warning new purchasers of the door opener of the danger. It did not warn previous purchasers, such as the owners of the garage door which injured the Downing plaintiffs' daughter, whose injury occurred when she activated the garage door.
 
 
 34
 The defendant manufacturer conceded that it had a duty under Colorado law to warn of dangerous conditions, but argued that the "duty exists only in regard to those products not yet sold." Downing, 707 P.2d at 1033. The Colorado Court of Appeals rejected that argument, stating:
 
 
 35
 The duty to warn exists where a danger concerning the product becomes known to the manufacturer subsequent to the sale and delivery of the product, even though it was not known at the time of the sale.
 
 
 36
 After a product involving human safety has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy such defects, or, if a complete remedy is not feasible, to give users adequate warnings and instructions concerning methods for minimizing danger.
 
 
 37
 . . . . .
 
 
 38
 Here, evidence of the subsequent warning would have directly supported a reasonable, logical, and natural inference that a hazard existed which was not obvious and which created an unreasonable risk of harm in the absence of warning.
 
 
 39
 Id. at 1033, 1034 (emphasis added) (citations omitted).
 
 
 40
 We read the Downing court's language as addressing defects in design, existing but unknown or unappreciated at the time of the original sale, which are subsequently discovered by the manufacturer. Indeed, that was precisely the case in Downing--the defect in design (dangerous placement of the activator button) was present, but unappreciated by the manufacturer, when the garage door opener was first sold. When the manufacturer later became aware of the defect, it had "a duty either to remedy [the] defect[ ], or, if a complete remedy is not feasible, to give users adequate warnings...." Id. at 1033. We see nothing in Downing extending to manufacturers a duty to retrofit a product which was non-defective under standards existing at the time of manufacture, yet which could subsequently be made safer by a later-developed safety device or design improvement.[4]
 
 
 41
 Thus, under Downing, the 706D tractor must have been defective and unreasonably dangerous at the time it was manufactured and sold in order for Colorado law to impose a post-sale duty to warn. This view is consistent with the Restatement (Second) of Torts § 402A setting forth the elements for a strict products liability claim, which Colorado has specifically adopted. See Schmutz v. Bolles, 800 P.2d 1307, 1316 (Colo.1990) ("Colorado has adopted the doctrine of strict liability as found in the Restatement (Second) of Torts § 402A.") (citing Jackson v. Harsco Corp., 673 P.2d 363, 365 (Colo.1983)).[5] See also Kysor Indus. Corp. v. Frazier, 642 P.2d 908, 910 (Colo.1982); Hiigel v. General Motors Corp., 190 Colo. 57, 544 P.2d 983, 987 (1975).
 
 
 42
 Ms. Romero cites no Colorado case, and our research reveals none, which holds that a manufacturer of a non-defective product, under then-current standards, must warn previous purchasers when a new safety device is developed. That goes far beyond Downing. Other jurisdictions, although not all, have rejected this argument as well. See, e.g., Sexton v. Bell Helmets, Inc., 926 F.2d 331, 337 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991) ("[A] product can only be defective if it is imperfect when measured against a standard existing at the time of sale or against reasonable consumer expectations held at the time of sale."); Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 344 (8th Cir.1988) (applying Missouri law, court concluded defendant "was not negligent, as a matter of law, in failing to retrofit the allegedly defective aerial bucket lift"); Gates v. Ford Motor Co., 494 F.2d 458, 460 (10th Cir.1974) (applying Oklahoma law, this court stated "the rule is well settled that a manufacturer does not have a legal duty to produce a product incorporating only features representing the ultimate in safety.... To recover, appellant necessarily must establish that the tractor was defective when manufactured"); Habecker v. Clark Equip. Co., 797 F.Supp. 381, 386 (M.D.Pa.1992) (following a Pennsylvania decision holding that "there is no cause of action for a continuing duty to warn purchasers of new developments which may make the product more safe."); Butler v. Navistar Int'l Transp. Co., No.89-0064-H, 1991 WL 441735, at * 6,1991 U.S.Dist. LEXIS 16701, at * 19-20 (W.D.Va. Oct. 18, 1991) (court rejected plaintiff's argument that defendant had a duty to retrofit, stating "[p]laintiff cites no authority for this position"); Moorehead v. Clark Equip. Co., No.86 C 1442, 1987 WL 26158, at * 2, 1987 U.S.Dist. LEXIS 11096, at * 5 (N.D.Ill. Dec. 2, 1987) (rejecting under Illinois law "the continuing duty of a manufacturer to notify prior purchasers of new safety devices"); Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 857 (Ala.1981) (holding that plaintiff seeking to impose liability for death resulting from lack of ROPS on tractor must show that the tractor was defective when sold); Jackson v. New Jersey Mfrs. Ins. Co., 166 N.J.Super. 448, 400 A.2d 81, 89, cert. denied, 81 N.J. 330, 407 A.2d 1204 (1979) ("There is no duty upon the seller of a machine faultlessly designed and manufactured ... to notify its customers after the time of sale of changes in the state of the art concerning the safe operation of such machine and advise them to install any new, updated or improved safeguards developed since the time of sale."); Lynch v. McStome and Lincoln Plaza Assocs., 378 Pa.Super. 430, 548 A.2d 1276, 1281 (Pa.Super.Ct.1988) (rejecting, under Pennsylvania law, duty to retrofit or warn previous purchasers of new design); Dion v. Ford Motor Co., 804 S.W.2d 302, 310 (Tex.Ct.App.1991) ("Ford did not assume a duty to improve upon the safety of its tractor by replacingan existing rollover protection system with an improved rollover protection system."); but see Bell Helicopter v. Bradshaw, 594 S.W.2d 519, 530 (Tex.Ct.App.1979) ("[O]nce Bell produced a design which was known to be safer, the manufacturer owed a duty to a person using its helicopter to refrain from allowing [the previously manufactured component part] to be used.").[6] See generally, Victor Schwartz, The Post-Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine, 58 N.Y.U.L.Rev. 892 (1983).
 
 
 43
 Ms. Romero attempts to fit within Downing's duty to warn by arguing; (1) "[b]ecause of the existence and use of roll bars prior to 1963, the defect on this tractor was in existence at the time of sale;" and (2) because her warn/retrofit claim is based on negligence, not on strict liability, the fact that the Restatement (Second) of Torts § 402A, comment (g), as incorporated into Colorado law, contemplates that the defect must exist at the time of manufacture and sale for strict liability to attach is irrelevant. We address the latter argument first.
 
 
 44
 Downing was indeed a strict liability case, not a negligence case. The court in Downing rejected the argument advanced by the defendant manufacturer that the duty to warn only applied in negligence cases and had no application to a strict liability case.
 
 
 45
 The difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether, under an objective standard, after weighing the relevant costs and benefits, a warning was required.
 
 
 46
 Downing, 707 P.2d at 1032 (citation omitted). The Colorado Court of Appeals in Halliburton v. Public Serv. Co., 804 P.2d 213, 217 (Colo.App.1990), cert. denied, (Colo.1991), stated, "the law applicable to warnings under § 402A are [sic] instructive in negligence cases as well." Colorado case law therefore suggests that there need not be a rigid distinction between negligence and strict liability failure to warn concepts.
 
 
 47
 Furthermore, Ms. Romero cites no authority for her argument that a plaintiff seeking to impose a post-sale duty to warn on a manufacturer under negligence should be exempted from having to show a negligent or defective design under standards existing at the time of manufacture and sale, whereas a plaintiff seeking to impose liability under a theory of strict liability must show that the defect existed, as in Downing, at the time of manufacture and sale.[7] Thus, we have no reason to conclude that the temporal focus in strict liability failure to warn cases--on the defectiveness of a product at the time of sale--should have no application in a negligence case seeking to impose liability for breach of that same duty.
 
 
 48
 Moreover, to succeed on her negligent failure to warn or retrofit claim, Ms. Romero must show the existence of a duty owed to Mr. Romero by Navistar. Connes v. Molalla Transp. Sys., Inc., 831 P.2d 1316, 1320 (Colo.1992) ("The elements of a negligence claim consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries."). As indicated, the only post-sale duty to warn we can discern under Colorado law is Downing's duty to warn of later discovered defects in a product. It does not impose a duty to retrofit.
 
 
 49
 Having established that Colorado only imposes a duty to protect users of products which had a design defect or hazard or were unreasonably dangerous under standards existing at the time of manufacture, which defect or hazard has been subsequently discovered by the manufacturer, we must address whether the court's instructions to the jury properly defined that duty. We hold that the jury's instructions, in conjunction with the special interrogatories, misled the jury as to the scope of Navistar's duty under Colorado law.
 
 
 50
 Viewed by itself, jury instruction 12, defining the "continuing duty [of a manufacturer] to use reasonable care to protect the users of its products," was not misleading to the jury. The jury could have interpreted that instruction as simply imposing a duty to warn purchasers about or use reasonable care to protect purchasers against newly-discovered defects in products, as in Downing. However, special interrogatory 3 instructed the jury that Navistar's duty could extend to using reasonable care "to see that the tractor was retrofitted with a protective roll guard." The interrogatory was worded in such a way as to compel the jury to impose liability for failing to retrofit a product or notify purchasers of the availability of a new safety device, even though the product, given then-existing standards and knowledge, was not defective when originally manufactured. Indeed, the jury's response to the three special interrogatories indicates that is precisely what it did--the jury found the tractor was free of defect when originally manufactured, yet imposed liability on Navistar for failing to subsequently retrofit it with its later-developed ROPS. That conclusion is inconsistent with the duty imposed on Navistar under Colorado law.
 
 
 51
 Ms. Romero attempts to sustain the jury's response to special interrogatory 3 by arguing vociferously that the jury did not find the tractor was free of defect or unreasonable danger, nor did it find that it was not negligently manufactured. She argues the court instructed the jury as to all the elements which must be proven for the claims of defective or negligent design to succeed--ten elements in the case of defective design and four elements in the case of negligent design. "The failure of proof could have been on any one of seven or more of those [ten] elements, not just those dealing with defectiveness or unreasonable dangerousness of the tractor.... The jury's response to interrogatory no. 2 [dealing with negligent design] does not delineate which element(s) Plaintiff failed to prove." Brief of Appellee at 28-29.
 
 
 52
 While the jury's response, viewed in isolation, does not reveal which elements the jury believed had not been proven, the manner in which both parties presented their evidence and arguments makes it clear that the jury could only have concluded that the tractor was neither defective nor negligently designed. As Navistar argues, the only element Navistar challenged throughout the case was whether the tractor was defective or negligently designed when manufactured in 1963. It did not attempt to establish that it should evade liability because the tractor did not reach Mr. Romero "without substantial change in the condition in which it was sold," nor did it argue that Mr. Romero was not a "person who would reasonably be expected to use, consume, or be affected by" the tractor.[8] Indeed, throughout the entire presentation of the case, from opening statements to closing arguments, the core issue, and the issue to which virtually all the evidence was directed, was whether the tractor was defective when manufactured because it lacked a roll bar or ROPS. Given that fact, it is clear that the jury could only have concluded that the tractor was not defective or unreasonably dangerous or negligently designed when it answered "no" to special interrogatories 1 and 2. Ms. Romero does not attempt to argue, and the record refutes any such argument, that the evidence about that core issue was so one-sided that the jury could not rationally have reached the verdict it did.
 
 
 53
 Having concluded that, after reviewing the record as a whole, the jury was indeed misinstructed as to the scope of Navistar's duty, we must consider whether that requires a new trial. We conclude it does not. As indicated, under Colorado law, Navistar could only be liable for breaching its duty to warn or protect purchasers of its tractors if those tractors were discovered to have been defective as originally manufactured, under standards applicable to tractors at that time. The jury's finding of no defect and no negligence in design relieved Navistar of any liability for breach of that duty. The district court should therefore have granted Navistar's motion for judgment n.o.v.
 
 
 54
 For the foregoing reasons, the judgment of the district court denying Navistar's motion for judgment n.o.v. is REVERSED and the case is REMANDED for entry of judgment in favor of Navistar.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The court directed a verdict for Navistar on the failure to warn claim. This was an allegation that Navistar failed to warn purchasers, at the time of sale of the tractor, about the use of the tractor without some rollover protection. Such a "point-of-sale" warning issue is different from the post-sale duty to warn which we address in this opinion. Ms. Romero has not appealed the dismissal of her point-of-sale warning claim
 
 
 [2]
 The jury was also instructed that "Mrs. Romero contends that Navistar failed to use reasonable care to have the tractor retrofitted with a roll bar at any time during the 25 years between the time it was manufactured and her husband's death." Appellant's Opening Brief, Appendix Vol. IV at 642
 
 
 [3]
 A federal court sitting in diversity and applying state law is obligated to follow the pronouncements of that state's highest court. See Menne v. Celotex Corp., 861 F.2d 1453, 1464 n. 15 (10th Cir.1988). It is not obligated, however, to accord the same weight to lower state court decisions. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); Florom v. Elliott Mfg., 867 F.2d 570, 580 (10th Cir.1989). Thus, we are not absolutely bound by the Colorado Court of Appeals' analysis in Downing. However, in the absence of any compelling reason to disregard it, and with no indication that the Colorado Supreme Court would decide the matter differently, we choose to follow Downing
 
 
 [4]
 The two cases cited in Downing in support of its duty to warn do not suggest that Downing should be read more broadly than we do. In Braniff Airways, Inc. v. Curtiss-Wright Corp., 411 F.2d 451 (2d Cir.), cert. denied, 396 U.S. 959, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969), a latent defect in the design of an airplane engine allegedly caused the plane to crash. The defect existed at the time of manufacture, as it did in Downing. Similarly, in Noel v. United Aircraft Corp., 342 F.2d 232 (3d Cir.1964), the defect in the airplane propeller system which allegedly caused a crash existed at the time of manufacture. The court did state that the manufacturer of the propeller system was under a "continuing duty" to improve a product where human safety is involved. However, as the concurring opinion indicates, that holding was not crucial to the court's decision
 
 
 [5]
 Section 402A of the Restatement provides as follows:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 Comment (g) provides as follows:
 The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed.
 
 
 [6]
 Ms. Romero relies on Bell Helicopter for her retrofit claim. Bell Helicopter does not persuade us to reach a different result here. First, Bell Helicopter has been criticized by some commentators as imposing an overly broad duty on manufacturers. See, e.g., Victor Schwartz, The Post-Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine, 58 N.Y.U.L.Rev. 892 (1983). Some courts have confined Bell to its somewhat unique facts. See, e.g., Syrie v. Knoll Int'l, 748 F.2d 304, 311-12 (5th Cir.1984); Dion v. Ford Motor Co., 804 S.W.2d 302, 310 (Tex.Ct.App.1991); Otis Elevator Co. v. Bedre, 758 S.W.2d 953, 955 (Tex.Ct.App.1988), rev'd and remanded for new trial, 776 S.W.2d 152 (Tex.1989). Finally, the Bell court specifically acknowledged that, "although the evidence is disputed, the jury reasonably could have found that the [previously manufactured product now found to be defective] was not merely 'less safe', ... but was actually dangerous to an unreasonable degree." Bell Helicopter, 594 S.W.2d at 530. Such is not the case here, where, as we discuss infra, the jury did find that the tractor in question was not defective
 
 
 [7]
 Courts from other jurisdictions have rejected the distinction Ms. Romero attempts to make. See Habecker v. Clark Equip. Co., 797 F.Supp. 381, 386 (M.D.Pa.1992) (following Pennsylvania state court decision involving a negligence action and rejecting a "continuing duty to warn purchasers of new developments which may make the product more safe"); Jackson v. New Jersey Mfrs. Ins. Co., 166 N.J.Super. 448, 400 A.2d 81, 89, cert. denied, 81 N.J. 330, 407 A.2d 1204 (1979) (denying plaintiff's post-sale duty to warn under both § 402A and negligence and observing, "[w]hether this claim, essentially one of failure to warn, is viewed as sounding in negligence ... or strict liability ... makes no difference"); Lynch v. McStome & Lincoln Plaza Assocs., 378 Pa.Super. 430, 548 A.2d 1276, 1281 (1988) (applying Pennsylvania law and rejecting the imposition of a duty, in negligence, to retrofit a product or notify owners of a new design)
 
 
 [8]
 While Navistar did present evidence that certain elements of the tractor were altered (the braking bar and PTO shield were missing and the tractor was equipped with automobile tires), it argues that the evidence of those changes was not introduced to show substantial change in condition, but rather to show Reyher Enterprises' attitude toward maintenance of its equipment, and it never suggested these changes in any way contributed to Mr. Romero's death. The references to those changes, as revealed in the record in this appeal, were sporadic and Navistar did not argue to the jury that they caused the accident
 For example, while Ms. Romero correctly points out that Navistar did not stipulate that the tractor reached Mr. Romero without substantial change in the condition in which it was sold, whereas it did stipulate to certain other elements in Ms. Romero's strict liability and negligent design claims, neither did Navistar pursue that aggressively as a defense. See, e.g., Pretrial Order, Appellant's Opening Brief Appendix Vol. I at 4-8. Even the court's instruction no. 2 to the jury, in which the court briefly summarized the case, did not state that Navistar argued it should avoid liability because the tractor had been altered or changed. Navistar's motion for a directed verdict made no reference to that issue, and the district court summarized the case as follows: "The whole case is based on that Mr. Romero would have survived the accident, if there had been a roll bar." Appellant's Opening Brief, Appendix Vol. III at 502. Similarly, in its closing argument, Navistar stated, "the entire theme of my argument will be [that] ... the tractor was safe as designed based upon all the objective evidence which you have before you." Id. at 436A. Again, the clear focus of the case and the parties' arguments was whether the tractor was defective or unreasonably dangerous because it lacked a roll bar or ROPS when manufactured.
 Further, as Navistar also argues, if the jury found that Mr. Romero was not a person who could reasonably be expected to use the tractor, then Navistar would have no duty to warn him. See Huffman v. Caterpillar Tractor Co., 908 F.2d 1470, 1479-80 (10th Cir.1990).