4 F.3d 864
 Prod.Liab.Rep.(CCH)P 13,669
Jordon PERLMUTTER, individually and as trustee for the Abe
Perlmutter Testamentary Trust; Leland Rudofsky, Gerard
Rudofsky, and Harley Rudofsky, trustees for the Albert
Rudofsky Family Trust; Bernstein Investment Co., a Colorado
Limited Partnership; Morrison Northglenn Partnership, a
Colorado General Partnership; and Glenn Investment
Partnership, a Colorado General Partnership,
Plaintiffs-Appellees/Cross-Appellants,
and
Sue M. Glick, Trustee for the Albert Rudofsky Family Trust, Plaintiff,
v.
UNITED STATES GYPSUM CO., Defendant-Appellant/Cross-Appellee,
and
National Gypsum Company; W.R. Grace & Company; Highland
Stucco and Lime Products, Inc., a California
Corporation, Defendants.
 Nos. 91-1265, 91-1271.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 3, 1993.
 
 Kell M. Damsgaard of Morgan, Lewis & Bockius, Philadelphia, PA (Peter H. Blair, Jr., of Foster & Blair, Denver, CO, with him on the brief), for defendant-appellant/cross-appellee.
 Kenneth B. McClain of Humphrey, Farrington & McClain, P.C., Independence, MO (William S. Silverman of Silverman & Riley, Denver, CO, with him on the brief), for plaintiffs-appellees/cross-appellants.
 Before McKAY, Chief Judge, McWILLIAMS and KELLY, Circuit Judges.
 McKAY, Chief Judge.
 
 
 1
 United States Gypsum Company appeals a jury award for negligence and failure to warn in selling an asbestos-containing acoustical plaster to Plaintiffs. USG contends that the trial court erred in several respects, discussed below. The Plaintiffs, the owners of a shopping mall where the plaster was used, cross-appeal on the issues of pre-judgement interest and punitive damages. Finding error below, we REVERSE the jury verdict and REMAND for a new trial. As a result, we need not consider Plaintiffs-Appellees' cross-appeal on damages.
 
 I.
 
 2
 In 1967, USG sold an acoustical plaster product to a group of Colorado real estate developers for use in the Northglenn Mall. The product, sold under the trade name Audicote, contained asbestos. In 1967, Audicote was neither advertised nor labeled as containing asbestos; the Developers were apparently unaware of the asbestos. USG issued "limitations," however, on the use of Audicote. These limitations were contained in marketing materials and catalogues targeting architects and designers who would specify the use of Audicote in buildings. The limitations indicated that Audicote should be used only in areas free from disturbance and high humidity.
 
 
 3
 Over the next twenty years, the Audicote was damaged by water leakage and routine maintenance at the Northglenn Mall. It was maintained and repaired by the Developers. In 1987, the Developers entered into negotiations to sell the mall for $30.8 million. When due diligence revealed the presence of asbestos, the parties terminated negotiations on this transaction. After expending $1.75 million to remove the Audicote, the Developers sold the mall to another purchaser for $34.5 million, representing a profit of approximately $20 million. The Developers do not assert that anyone has been physically injured by the presence of the product or that property damage occurred other than contamination which required removal of the Audicote.
 
 
 4
 The Developers brought suit to recover the cost of removing and replacing the plaster. The Developers asserted causes of action based on strict liability, negligence, breach of express and implied warranties, fraudulent concealment, and misrepresentation.[1] The jury subsequently found in favor of USG on the strict liability claim but for the Developers on the claim for negligence and failure to warn after the sale. After various unsuccessful post-trial motions by USG and the Developers, both sides appealed.
 
 II.
 
 5
 The first issue we address is whether the nature of the injury Developers allege entitle them to the damages they seek. USG argues on this appeal that the Developers have alleged merely economic loss resulting from a product's performance that did not meet their expectations. As such, USG argues, the Developers' cause of action is for contract damages, not for the tort damages Developers seek. The trial court's determination of this question under Colorado law is reviewed under a de novo standard. Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 871-72 (10th Cir.1992).
 
 
 6
 Our recent decision, Adams-Arapahoe, 959 F.2d at 868, controls our decision. In that case, the school district sought to recover damages it alleged that it suffered from the presence in its buildings of an asbestos-containing floor tile. The school district alleged that the presence of asbestos in the tile itself and the risk associated with the asbestos, as well as contamination of the school buildings, constituted injury sounding in tort. Id. at 871.
 
 
 7
 We noted that under Colorado law, a plaintiff must allege physical injury to person or property to recover in tort. See id. (citing Jardel Enters., Inc. v. Triconsultants, Inc., 770 P.2d 1301, 1304 (Colo.Ct.App.1988) (economic loss rule does not prevent negligence action to recover for physical injury to person or property); Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc., 739 P.2d 239, 242 (Colo.1987) (actual loss or damage essential to tort action)). Consequently, we rejected the school district's argument that the mere presence of asbestos in a product or the risk of injury from the presence of asbestos constituted the type of physical injury remediable by a tort action. Id. at 872-73. We noted that contamination from the asbestos-containing floor tile would entitle the school district to recovery in tort. See id. at 873. We held, however, that the school district had not presented sufficient evidence to sustain an action to recover for the contamination from the floor tile. Id. at 874.
 
 
 8
 The question we are presented under Adams-Arapahoe is whether the Developers have presented evidence sufficient to overcome USG's motion for directed verdict and post-trial motions on this claim. In so doing, we view the evidence in the light most favorable to the Developers and draw all inferences in the Developers' favor. Id. at 873 (citing Hill v. Goodyear Tire & Rubber, Inc., 918 F.2d 877, 880 (10th Cir.1990)). We believe that the Developers have met this burden.
 
 
 9
 At trial, the Developers did more than present evidence that the Audicote plaster used in the Northglenn Mall contained asbestos or that the plaster could release asbestos dust if disturbed or allowed to flake or crumble. The Developers showed that there were significant amounts of asbestos fibers not only on top of a display case but also near an information booth, as well as in an area near certain lighting fixtures and on carpeting at the entry way to one of the stores. There was also expert testimony that given the condition of the asbestos, it needed to be removed. Taking the evidence and all reasonable inferences in the light most favorable to the Developers, we hold that under the controlling law the Developers have presented evidence sufficient to prove tortious injury resulting from the Audicote plaster.
 
 III.
 
 10
 Next we address USG's contention that the trial court improperly instructed the jury on USG's post-sale duty to warn the Developers regarding the potential dangers of the Audicote plaster. During the trial, the Developers argued that USG was under a continuing duty to warn consumers of the dangers associated with the use of Audicote because it contained asbestos. USG argued that no such post-sale duty to warn exists under Colorado law. The trial court allowed the Developers to present scientific evidence, developed after USG sold the Audicote to the developers, regarding the safety of asbestos. At the conclusion of the evidence, the trial court instructed the jury that one cause of action asserted by the Developers was
 
 
 11
 a continuing duty to use reasonable care to warn users of its products from dangers which it knew or should have known about. The manufacturer is under a duty to keep informed about its products from research, accident reports, scientific literature and other sources reasonably available to it, and to use reasonable methods to advise the users concerning hazards which the manufacturer learns about during the expected useful life of the product.
 
 
 12
 (USG App. at 92a.) USG asserts that the trial court erred in concluding that a post-sale duty to warn existed under Colorado law and that the evidence admitted and instructions were in error.
 
 
 13
 A federal court, sitting in diversity, must "ascertain and apply Colorado law [with the objective] that the result obtained in the federal court [should be] the result that would [be] reached ... in a Colorado court." Adams-Arapahoe, 959 F.2d at 871 (citing Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73, 58 S.Ct. 817, 819-20, 82 L.Ed. 1188 (1938)). We review this state law determination de novo. Adams-Arapahoe, 959 F.2d at 871 (citing Salve Regina College v. Russell, 499 U.S. 225, 239, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991)).
 
 
 14
 The Colorado Supreme Court has not spoken authoritatively on the question of when a post-sale duty to warn arises under Colorado law. The lead case on this issue is Downing v. Overhead Door Corp., 707 P.2d 1027 (Colo.Ct.App.1985).[2] In Downing, the Colorado Court of Appeals considered whether the manufacturer of an automatic garage door opener had a duty to warn consumers of the dangers of placing the activation switch within the reach of children. The manufacturer had become aware of this danger after it sold the door opener which injured the plaintiff in Downing. The Colorado Court of Appeals stated:
 
 
 15
 The duty to warn exists where a danger concerning the product becomes known to the manufacturer subsequent to the sale and delivery of the product, even though it was not known at the time of the sale.
 
 
 16
 After a product involving human safety has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy such defects, or, if a complete remedy is not feasible, to give users adequate warnings and instructions concerning methods for minimizing danger.
 
 
 17
 Id. at 1033.
 
 
 18
 Since the initiation of the instant case, this court has considered the breadth of the post-sale duty to warn articulated in the Downing decision. In Romero v. International Harvester Co., 979 F.2d 1444 (10th Cir.1992), we held that Downing addressed only "defects in design, existing but unknown or unappreciated at the time of the original sale...." Id. at 1450. We interpreted Downing as imposing no post-sale duty to warn or remedy when the product was non-defective under standards existing at the time of manufacture. Id. at 1450. Under Downing and Romero, the question in the instant case becomes whether Audicote was defective under standards existing at the time Audicote was sold.[3]
 
 
 19
 USG sold the Audicote used in the Northglenn Mall in 1967. According to the evidence presented at trial, in the 1950s and 1960s asbestos was a widely-used component in many buildings. (USG App. at 422-24a.) Standards for the use of building materials in governmental buildings provided for the use of asbestos. (USG App. at 618a-19a.) Audicote complied with these standards. (Id.) In the 1960s, evidence regarding the hazards associated with low-level exposures to asbestos was, at most, inconclusive. (See USG App. at 548a.) It was not until the 1970s that government standards began to restrict or prohibit the use of asbestos as a building material. (USG App. at 255-56.)
 
 
 20
 The Developers presented evidence at trial that showed that USG did have some knowledge of potential dangers from asbestos exposure as early as the 1930s. According to the Developers, this information led USG to screen new employees for prior exposure to asbestos, (Perl.App. at 121, 123, 259), and to undertake precautions to protect its employees from asbestos-related disease. The Developers did present evidence that as early as 1966 there was speculation that low-level asbestos exposure could present a health hazard. The evidence indicated, however, that at that time the dangers of asbestos were not fully understood.
 
 
 21
 The evidence presented by the Developers does not demonstrate that Audicote was a defective product for use in commercial buildings in 1967. Almost all the evidence relates to industrial and occupational exposure of workers producing asbestos products. The evidence pertaining to exposure from the presence of asbestos in commercial buildings indicates that the dangers were not fully understood until after the Audicote was used in the Northglenn Mall. Even taking the evidence in the light most favorable to the Developers, it does not persuade us that Audicote was recognized as a defective product for use in commercial buildings in 1967.
 
 
 22
 Because the Developers have not proven that the Audicote was a defective product for use in commercial buildings in 1967, they were not entitled to an instruction on a post-sale duty to warn. Accordingly, we REVERSE the jury's verdict on that cause of action.
 
 IV.
 
 23
 USG claims that the trial court erred by admitting post-sale evidence of USG's knowledge that Audicote was potentially dangerous. According to USG, this evidence undermined USG's "state-of-the-art" defense--that Audicote was safe under the safety standards and scientific knowledge reasonably available to USG at the time of sale. USG believes the admission of evidence of USG's post-sale statements and actions prejudiced the jury by suggesting that USG did not in fact espouse the position asserted at trial.
 
 
 24
 In Colorado, products liability actions are governed under the Colorado Product Liability Act, Colorado Revised Statutes sections 13-21-401 to -406 (1987). Section 404 provides that
 
 
 25
 [i]n any product liability action, evidence of any scientific advancements in technical or other knowledge or techniques, or in design theory or philosophy, or in the manufacturing or testing knowledge, techniques, or processes, or in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose other than to show a duty to warn.
 
 
 26
 Id. The standard for the admissibility of the evidence in this diversity action is governed by this provision. See Moe v. Avions Marcel Desault-Breguet Aviation, 727 F.2d 917, 931-33 (10th Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984).
 
 
 27
 This trial took place, as we have noted, before our decision in Romero v. International Harvester Co., in which we held that no post-sale duty to warn existed unless the product in question had, under standards existing at the time of manufacture, some defect that was not known or appreciated. Consequently, we believe that the trial court was presented with a jury question regarding whether a post-sale duty to warn existed. This jury question made admissible the evidence of post-sale technical advancements and discoveries. USG's remedy, at that point, was to request an instruction limiting the jury's use of such evidence to the issue of a post-sale duty to warn. According to the record, USG did not do this. Consequently, under the law existing at the time of trial, we find no error in the admission of the post-sale evidence.[4]V.
 
 
 28
 USG asserts on appeal that the trial court erred by excluding evidence of the sale price of the Northglenn Mall offered by a potential purchaser prior to the discovery of asbestos and the price for which the mall sold after the Audicote was removed. USG claims that by excluding this evidence, they were precluded from showing that the Developers experienced no actual loss and that the motivation for removing the Audicote was to facilitate the sale of the Northglenn Mall. The trial court excluded the evidence under Fed.R.Evid. 403 because it was prejudicial to the Developers. (USG App. 352a.) We review the trial court's exclusion for an abuse of discretion. C.A. Assocs. v. Dow Chem. Co., 918 F.2d 1485 (10th Cir.1990).
 
 
 29
 Under Fed.R.Evid. 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Id. The trial judge conducts a balancing of the probative value of the evidence against its potentially prejudicial, confusing, or misleading effect. USG sought to admit evidence of three figures. First, it sought to include evidence of a purchase price offered by a prospective purchaser prior to the discovery of asbestos in the Audicote. Second, USG sought to include evidence of the actual purchase price of the Northglenn Mall after the original deal fell through and the Audicote was removed and replaced. Finally, USG sought to include evidence of the profit made by the Developers on the sale of the Northglenn Mall. This evidence, USG contends, would have shown that the Developers suffered no actual loss and that the Developers' motivation in removing and replacing the Audicote was to maximize its profit on the sale of the Northglenn Mall.
 
 
 30
 We do not agree that the trial court abused its discretion in excluding this evidence. It is clear that the Developers were required to show actual loss to recover in tort. Adams-Arapahoe, 959 F.2d at 871. What is less clear is that the evidence that USG sought to admit was probative that the Developers did or did not suffer actual loss.[5] The evidence does not show that the value of the property before it was diminished by the presence of the asbestos. Nor did it show the cost of repair or removal.
 
 
 31
 On the other hand, the evidence was potentially very prejudicial. It could have been understood by the jury to show that, despite any loss occasioned by the removal and replacement of the Audicote, the Northglenn Mall project was very lucrative and the Developers benefited greatly. This might have persuaded the jury that the Developers could afford to bear any loss associated with the removal of the Audicote. Because we feel that the trial judge adequately balanced these factors,[6] we AFFIRM the trial court on the exclusion of this evidence.
 
 VI.
 
 32
 USG asserts that the trial court erred by failing to instruct the jury on its theories of intervening cause, misuse, and comparative negligence. According to USG, evidence of water damage and disturbance of the Audicote at the Northglenn Mall was sufficient to justify the instruction that an intervening cause resulted in the Developers' damage, and that the Developers misused Audicote by applying it in locations subject to water damage and disturbance in contravention of its instructions. USG further contends that it was entitled to an instruction on comparative fault in accordance with Colorado Revised Statutes section 13-21-406 (1987).
 
 
 33
 In a diversity case, the substance of the jury instructions is determined by state law, while the grant or denial of tendered instructions is governed by federal law. Slane v. Jerry Scott Drilling Co., 918 F.2d 123, 126 (10th Cir.1990). A party is entitled to an instruction on their theory of the case so long as the instruction is supported by competent evidence on the issue or theory supporting the instruction. Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir.1984). The evidence justifying the instruction must be more than speculation or conjecture. Id. "There must be more than a mere scintilla of evidence to support an instruction. Sufficient competent evidence is required." Farrell v. Klein Tools, Inc., 866 F.2d 1294, 1297 (10th Cir.1989). Accordingly, we look to the state law to determine the basic elements of the legal theories asserted, and then to the evidence to see if it supports the granting of the instruction.
 
 A. Intervening Cause
 
 34
 Under Colorado law, a defendant is relieved of liability if the harm was caused by an unforeseeable, intervening cause. Jones v. Caterpillar Tractor Co., 701 P.2d 84, 86 (Colo.Ct.App.1984). Whether such a cause is reasonably foreseeable is a question of fact for the jury. Id. "If the evidence reveals that another cause may not have been sufficiently foreseeable so that it might constitute an intervening cause, thereby relieving the defendant of liability, then [a Colorado] court must include intervening cause in the instruction." Id.
 
 
 35
 At trial, USG presented evidence that at least a part of the reason that removal of the Audicote was recommended was water damage from leaking skylights and the disturbance of the plaster. USG also presented evidence that it instructed the users of Audicote to use the product only in locations where it would be dry and free from disturbance. USG contends that it was unforeseeable that the Audicote would be used around faulty skylights and subjected to water damage over decades.
 
 
 36
 While we do not feel that USG's evidence is by any means compelling, it was sufficient to raise the issue that the water damage and other disturbance to the plaster was an unforeseeable cause of the harm suffered by the Developers. As such, it supported the instruction, tendered by USG, on intervening cause. Accordingly, we hold that the failure of the trial court to instruct the jury on intervening cause constituted reversible error.
 
 B. Misuse of Audicote
 
 37
 At trial, USG presented evidence that it had included instructions regarding the use of Audicote in marketing materials and catalogues. These instructions directed that Audicote not be used in areas that would likely experience direct contact or would be subjected to high humidity or condensation. These "limitations" on the use of the product were contained in informational materials provided to architects and designers who would specify the use of Audicote. The warnings did not appear on the product itself, nor did they indicate that the Audicote contained asbestos.
 
 
 38
 USG contends that the placement of the Audicote around the leaking skylights and the disturbance of the Audicote during maintenance and repair of the mall constituted misuse of the product. USG further argues that misuse was unforeseeable and that it relieves it from liability. USG asserts that the trial court erred in failing to instruct the jury on its theory of misuse of the product.
 
 
 39
 The Colorado courts have held that an unintended and unforeseeable misuse of a product is a defense to a products liability action. See Uptain v. Huntington Lab, Inc., 723 P.2d 1322, 1325-26 (Colo.1986); States v. Werner Co., Inc., 799 P.2d 427, 430 (Colo.Ct.App.1990); Pratt v. Rocky Mountain Natural Gas Co., 805 P.2d 1144, 1146 (Colo.Ct.App.1990). Although the defense was applied to strict liability actions in these cases, "the doctrine of misuse is a question of causation." States, 799 P.2d at 430. As such, it is applicable in a negligence action as well. See id.
 
 
 40
 The seminal Colorado case on the use of a product contrary to its warnings or instructions is Uptain v. Huntington Lab, Inc., 723 P.2d at 1322. In that case, a maintenance worker used a cleaning product containing hydrochloric acid. The product label warned users to avoid contact with the skin because it could cause chemical burns. Contrary to the warning, the plaintiff used the product with her unprotected hands and was injured. In the subsequent products liability action, the manufacturer asserted that the plaintiff had misused the product in an unforeseeable manner, relieving the manufacturer of liability.
 
 
 41
 On appeal, the Colorado Supreme Court affirmed the trial court on instructing the jury regarding misuse as a defense. The court held that when a product is used in manner or for a purpose which is unintended and which could not reasonably have been foreseen, the manufacturer is not legally responsible. Id. at 1325.[7] The Colorado courts have subsequently held that whether a use or a manner of use is reasonably foreseeable is a jury question, see id. at 1326, and that a defendant raising such an issue is entitled to an instruction on misuse, see Pratt, 805 P.2d at 1146.
 
 
 42
 The instant case is complicated by the fact that the "limitations" issued by the manufacturer were not on the product itself but were contained in marketing materials targeted at third parties. On this issue, we find the case of Peterson v. Parke Davis & Co., 705 P.2d 1001 (Colo.Ct.App.1985), instructive.[8] In Peterson, the plaintiff was injured by a prescribed medication. The manufacturer argued at trial that the failure of the prescribing physician to read and follow the warnings contained in the package insert and the Physician's Desk Reference, which provides physicians with information on drugs, constituted unforeseeable misuse of the product. The trial court instructed the jury on misuse based upon the failure by the physician to make himself aware of the warnings. The plaintiff appealed the instruction.
 
 The Colorado Court of Appeals stated that
 
 43
 "[m]isuse of a product is all possible types of use, or conduct affecting use, by the plaintiff or a third party which is improper in light of the qualities and characteristics of the product itself. 'Misuse ... which cannot be reasonably anticipated by the manufacturer can be utilized as a defense in a products liability case by showing that the conduct of the user [here the attending physician], and not the alleged defect in the product actually caused the injury.' "
 
 
 44
 Id. at 1003 (emphasis added) (citations omitted).[9]
 
 
 45
 At trial, USG put on testimony that Audicote's instructions limited its use to places free from disturbance or high humidity. USG placed these limitations in marketing materials and catalogues regarding Audicote; there was no warning placed on the product itself. The USG witness stated that this was because the warning was aimed at architects and designers who would specify the use of the plaster, and not at the occupants of the buildings containing the product.
 
 
 46
 We believe that this evidence, though far from conclusive, is sufficient to raise the issue that the Audicote was used in a manner that was not reasonably anticipated by USG. Consequently, we believe that USG was entitled to an instruction on misuse at trial.
 
 C. Comparative Negligence
 
 47
 Colorado Revised Statutes section 13-21-406 provides:
 
 
 48
 Comparative fault as measure of damages. (1) In any product liability action, the fault of the person suffering harm, as well as the fault of all others who are parties to the action for causing the harm, shall be compared by the trier of fact in accordance with this section. The fault of the person suffering the harm shall not bar such person, or a party bringing an action on behalf of such person, or his estate, or his heirs from recovering damages, but the award of damages to such person or the party bringing the action shall be diminished in proportion to the amount of causal fault attributed to the person suffering the harm. If any party is claiming damages for a decedent's wrongful death, the fault of the decedent, if any, shall be imputed to such party.
 
 
 49
 The intent of this statute is to allow the trier of fact to consider fault in arriving at a damage award. It does not address the issue of liability. See Welch v. F.R. Stokes, Inc., 555 F.Supp. 1054, 1055 (D.Colo.1983); States, 799 P.2d at 430. This court has construed the word "fault," in the context of this section, to encompass a "broad range of culpable behavior including, but not limited to, negligence." Huffman v. Caterpillar Tractor Co., 908 F.2d 1470, 1477 (10th Cir.1990); Carter v. Unit Rig & Equip. Co., 908 F.2d 1483, 1486 (10th Cir.1990).
 
 
 50
 The language of section 406 limits its applicability to the parties to the action. As already mentioned, the limitations USG issued on Audicote's use were contained in marketing materials and catalogues. This information was aimed at architects and others who might specify the use of the product in a building. It was not intended to reach the ultimate consumer, and there is no evidence that the Developers were ever aware of these limitations. Accordingly, we do not believe that, even under the broad conception of fault as embodied in section 406, USG was entitled to an instruction on comparative fault. We hold that USG was not entitled to such an instruction.
 
 
 51
 We hold that USG was entitled to the requested instructions on intervening cause and misuse, but was not entitled to an instruction on comparative fault. Consequently, we REMAND for a new trial on the Developers' negligence cause of action.[10]
 
 VII.
 
 52
 USG asserts that the trial court erred by failing to instruct the jury regarding a statutory presumption that a product is not defective ten years after it is sold. We disagree with USG and hold that the trial court did not err by not instructing the jury on this presumption.
 
 
 53
 Colorado Revised Statutes section 13-21-403(3) provides that
 
 
 54
 [t]en years after a product is sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.
 
 
 55
 USG correctly argues that the Colorado courts have given this statute varying interpretations. Compare Downing v. Overhead Door Corp., 707 P.2d at 1031 (ten years runs from time product causing injury sold to defendant) with Patterson v. Magna American Corp., 754 P.2d 1385, 1387 (Colo.Ct.App.1988) (ten years runs from time product line first sold to public). Recent interpretation of this statute by the Colorado Supreme Court, however, obviates our need to resolve such questions.
 
 
 56
 In Mile Hi Concrete, Inc. v. Matz, 842 P.2d 198 (Colo.1992), the Colorado Supreme Court considered the question of when a defendant in a products liability action was entitled to an instruction on the presumption based upon section 13-21-403(3). The plaintiff in that case had been injured while using the defendant's product. The trial court instructed the jury regarding the statutory presumption. On appeal, the plaintiff challenged this instruction.
 
 
 57
 The Colorado Supreme Court noted that the plaintiff has the burden of persuasion on product defect in a strict liability or negligence action. Id. at 205. The court further noted that, under Colorado evidence law, presumptions impose a burden of going forward with evidence, but that they do not shift the burden of persuasion. Id. (quoting Colo.R.Evid. 301). In explaining that the plaintiff's burden of persuasion on product defect made the instruction on a presumption of no defect unnecessary, the court said:
 
 
 58
 If a plaintiff fails to present sufficient evidence that a product is defective, he cannot satisfy the burden of persuasion or establish a prima facie case and a court will direct a verdict for the defendant. On the other hand, a plaintiff who has presented sufficient evidence to defeat a motion for a directed verdict has necessarily rebutted the presumption of section 13-21-403(3). Therefore, no reason exists for a trial judge to instruct a jury on the statutory presumption of section 13-21-403(3).
 
 
 59
 Id. (footnote omitted). The court held that the trial court had erred by instructing the jury on the presumption contained in section 13-21-403(3).
 
 
 60
 We believe that Mile Hi Concrete is dispositive on this issue. Under Mile-Hi Concrete, it is not necessary to instruct the jury on the presumption contained in section 13-21-403(3) if the plaintiff has presented evidence sufficient to survive a motion for a directed verdict. The record suggests that a motion for directed verdict was made and denied. Accordingly, we hold that the trial court did not err in refusing to grant the instruction.
 
 VIII.
 
 61
 Finally, USG argues that the claims of all the Plaintiffs except Jordon Perlmutter fail for lack of proof. USG's argument is founded on the fact that only Jordon Perlmutter testified at the trial as to his lack of knowledge of asbestos in the Audicote and the effect that a warning would have had on him. Thus, USG argues, at most only Jordon Perlmutter is entitled to recovery.
 
 
 62
 Because we remand this case for a new trial on the issue of negligence, we find it unnecessary to reach the question of whether the jury was entitled to grant recovery to all Plaintiffs. On remand, each Plaintiff will, of course, be required to prove his or her cause of action. Whether the evidence presented in that trial is sufficient to support a jury finding in favor of each Plaintiff can be evaluated at that time.
 
 IX.
 
 63
 In conclusion, because we find that the Developers presented evidence sufficient to show tortious injury, we reject USG's argument that the Developers only proved economic loss, and we AFFIRM the trial court on that issue. We REVERSE the trial court's imposition of a post-sale duty to warn upon USG. Because we find error in the denial of jury instructions requested by USG, we REMAND for a new trial on the question of negligence. At the new trial, evidence will be admitted in accordance with this opinion.
 
 
 
 [1]
 The Developers withdrew the warranty claims prior to trial. At the close of the Developers' evidence, USG moved for a directed verdict on all claims. The court directed a verdict on the fraudulent concealment and misrepresentation claims. USG renewed its motion at the close of all the evidence
 
 
 [2]
 In this case, we are obliged to follow the law as articulated by the Colorado Supreme Court. Menne v. Celotex Corp., 861 F.2d 1453, 1464 n. 15 (10th Cir.1988). Although we are not required to follow the pronouncements of an intermediate court, see Florom v. Elliot Mfg., 867 F.2d 570, 580 (10th Cir.1989), we find it persuasive of how the Colorado Supreme Court might rule
 
 
 [3]
 We note that our interpretation of Colorado's post-sale duty to warn in Romero represents a significant limitation upon that duty. Our interpretation of this state law question is, of course, subject to further action by the Colorado courts. We continue to follow Romero until the Colorado courts act
 
 
 [4]
 Our remand on the negligence cause of action for reasons discussed below will not allow the Developers to revisit the issue of the defective nature of the product when it was sold in 1967. The jury's verdict on the strict liability cause of action found that Audicote was not a defective, unreasonably dangerous product when sold. Our decision today holds that Audicote was not defective under standards existing in 1967, for purposes of imposing a post-sale duty to warn
 Accordingly, we believe that Developers are precluded from arguing that the Audicote was defective under the standards existing before 1967. Rather, Developers are limited to proving that, at the time of sale, USG was negligent in the selling of Audicote. The issue will be whether USG's conduct in the development, design, and marketing of Audicote, prior to 1967, failed to meet the appropriate standard of care.
 
 
 [5]
 Moreover, we are not convinced that the evidence is relevant under Fed.R.Evid. 401 and 402. Because we hold today that the Developers demonstrated not merely economic loss, but actual tortious injury in the form of contamination of the Northglenn Mall, their motivation in remedying this injury is arguably irrelevant
 
 
 [6]
 See USG App. at 352a. The trial court excluded the evidence, stating that to the extent that the evidence was relevant, its probative value was outweighed by prejudice
 
 
 [7]
 The Uptain court also rejected the plaintiff's argument that the manufacturer's warning to avoid skin contact established that it was reasonably foreseeable that such contact might occur. The court adopted comment j to Sec. 402A of the Restatement (Second) of Torts, which provides that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded." Uptain, 723 P.2d at 1326
 
 
 [8]
 Again we note that, although we are not bound by the precedents of Colorado's intermediate courts, we believe they provide guidance in our effort to determine how the Colorado Supreme Court might rule
 
 
 [9]
 The court cited Bradford v. Bendix-Westinghouse Automotive Air Brake Co., 517 P.2d 406 (Colo.Ct.App.1973). Bradford stands for the proposition that the foreseeability of intervening negligence or misuse by a third party is a jury question. Id. at 414
 
 
 [10]
 Because we remand on the negligence cause of action, we do not reach USG's argument that the jury verdict was inconsistent. USG argued that the jury's finding for USG on the strict liability account but for the Developers on the negligence count was inherently inconsistent and required reversal. Without reaching the question, we note that trial and appellate courts have a duty to reconcile a verdict if reconciliation is possible. Harvey v. General Motors Corp., 873 F.2d 1343, 1347-48 (10th Cir.1989). We believe that such reconciliation would not be difficult in this case
 As stated in Romero, "the difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe...." Romero, 979 F.2d at 1452 (quoting Downing v. Overhead Door Corp., 707 P.2d at 1032 (emphasis added)). Accordingly, the jury could find that while the product was not defective or unreasonably dangerous, the manufacturer's conduct failed to meet the appropriate standard of care.