CRAIG W. BARTLETT, an Infant, by WAYNE A. BARTLETT et al., His Parents, et al., Respondents-Appellants, v GENERAL ELECTRIC COMPANY, Appellant-Respondent, et al., Defendants.

Third Department, December 9, 1982

APPEARANCES OF COUNSEL

*Rosch & Rosch* (*Joseph E. Rosch* of counsel), for respondents-appellants.

*Paul F. Donohue Associates, P. C.* (*Kenneth G. Varley* of counsel), for appellant-respondent.

OPINION OF THE COURT

MAIN, J.

On October 2, 1977, the infant plaintiff Craig Bartlett sustained serious injuries to his face, mouth and lips as a result of an accident which occurred at the home of his grandparents, defendants Clarence Williams and Madeline Williams. Since it appeared that the then 10-month-old child had been injured as a result of biting on the joint of an extension cord manufactured by defendant General Electric Company (hereinafter General Electric) and the plug of a table lamp, his parents instituted the present action on his behalf and sued General Electric therein for personal injuries on the theories of negligence, strict products liability, breach of implied warranty and breach of expressed warranty. The parents also commenced a derivative action in their own behalf wherein they sought a recovery for the medical expenses incurred and the loss of their son's services resulting from the accident.

At the conclusion of the subsequent trial, while the jury was deliberating, defendants Clarence Williams and Madeline Williams settled with plaintiffs for the sum of $25,000 and the jury then returned a verdict in the personal injury action of $150,000 against General Electric on the negligence and strict products liability theories and found there to be no cause of action against the settling defendants. An additional $5,000 in damages was awarded to plaintiff parents in the derivative action, and when General Electric thereafter moved for a judgment notwithstanding the verdict and for a reduction of the personal injury verdict from $150,000 to $125,000 to allow for the amount of the above-cited settlement, both of its motions were denied. By order entered February 5, 1982 the court did reduce the award to the parents in the derivative action from $5,000 to $2,657.05, however, and it is from this order that the plaintiff parents now appeal. For its part, General

Electric appeals from each and every part of the judgment on the verdict.

■ Considering initially General Electric's contentions that the court erred at trial when it admitted evidence of design changes made in General Electric extension cords several years after the manufacture of the cord at issue here and also evidence of warnings included on the packaging of later-manufactured General Electric extension cords, we find these arguments lacking in substance. According to plaintiffs, the subject design changes and warnings were necessary because certain characteristics of the cord at issue made it unreasonably dangerous, as then designed, for its intended use. For example, the cord was concededly designed so that, when used for its intended purpose, it conducted electric current while its unused plug receptacles were uncovered and while the prongs of the plug connecting with the cord were left exposed, and plaintiffs presented evidence indicating that these particular design defects rendered the cord hazardous to use, particularly in the absence of warnings supplied by the manufacturer as to the dangers involved. Additional evidence was presented to the effect that the noted defects were a substantial factor in causing the personal injuries to the infant plaintiff herein.

Given these circumstances, plaintiffs understandably sought to introduce evidence of design changes and warnings subsequently adopted by General Electric in its production of extension cords, all of which were intended to make the cords subsequently marketed more safe for use by the purchasing public by rectifying the defects noted above, and such evidence was highly probative of how readily the cord at issue here could have been made less dangerous to use before it was offered for sale to the public. Moreover, it is most significant that the record also contained evidence, largely in the testimony of plaintiff's expert and of General Electric's own manager of products safety and standards, relative to the state of the art of designing and producing extension cords at the time the cord involved here was made. This latter evidence was to the effect that, at the pertinent time between 1955 and 1961, the technology with regard to extension cords was

such that General Electric knew or should have known of the dangers inherent in its cord and also of the advisability of the warnings and design changes then available which it adopted some years thereafter. Upon such a record as this, General Electric cannot persuasively argue that the challenged proof should not have been admitted into evidence at trial (cf. *Rainbow v Elia Bldg. Co.*, 79 AD2d 287, affd 56 NY2d 550; see, also, *Opera v Hyva, Inc.*, 86 AD2d 373; *Bolm v Triumph Corp.*, 71 AD2d 429, mot for lv to app dsmd 50 NY2d 801).

General Electric's further assertions that the court's charge to the jury was improper and that the verdict was against the weight of the evidence are similarly without merit. Read as a whole, the charge adequately presented the pertinent legal principles to be applied and the factual issues to be resolved (cf. *Brennan v Commonwealth Bank & Trust Co.*, 65 AD2d 636) and the proof presented at trial, as described in some detail above, was plainly sufficient to support the verdict ultimately returned.

As for the court's refusal to reduce the verdict in favor of the infant plaintiff by the amount of the settlement between plaintiffs and defendants Clarence Williams and Madeline Williams, we reach a contrary result. Clearly, these defendant grandparents were persons "claimed to be liable in tort" for the infant's personal injuries, and consequently, the personal injury verdict should be reduced by the amount of the settlement, pursuant to section 15-108 of the General Obligations Law, so as to avoid a recovery by plaintiffs of a $25,000 windfall (see *Werner v Our Lady of Lourdes*, 60 AD2d 791).

Lastly, we find that the court also erred when it reduced the verdict in the derivative action from $5,000 to $2,657.05, the amount of the parents' medical and hospital expenses for their child. In addition to this $2,657.05 in expenses, the parents were entitled to recover for their loss of the services of their child (*Clarke v Eighth Ave. R. R. Co.*, 238 NY 246), and the trial court should not have substituted its judgment for that of the jury on that factual issue (cf. *Mullen v Fayette*, 274 App Div 527, affd 300 NY 501).

The judgment should be modified, on the law, by reducing the award to the infant plaintiff by $25,000, and, as so modified, affirmed, without costs.

The order should be reversed, on the law, without costs, and the motion by defendant General Electric Company to reduce the verdict of the plaintiffs in the derivative action denied.

Mahoney, P. J., Sweeney, Weiss and Levine, JJ., concur.

Judgment modified, on the law, by reducing the award to the infant plaintiff by $25,000, and, as so modified, affirmed, without costs.

Order reversed, on the law, without costs, and motion by defendant General Electric Company to reduce the verdict of the plaintiffs in the derivative action denied.