**A. Joe DOWNING, as father and next friend of Jonlon J. Downing, a minor, Plaintiff-Appellant,**

v.

**OVERHEAD DOOR CORPORATION, a Texas corporation, Defendant-Appellee.**

**No. 83CA0171.**

Colorado Court of Appeals,
Div. III.

May 2, 1985.

Rehearing Denied June 6, 1985.

Certiorari Denied Oct. 15, 1985.

Quigley & Goss, Neil Quigley, Douglas K. Goss, Denver, for plaintiff-appellant.

Madden and Strate, P.C., William J. Madden, Wheatridge, for defendant-appellee.

METZGER, Judge.

In this products liability case, plaintiff, A. Joe Downing, as father and guardian of minor Jonlon Downing, sought to recover from defendant, Overhead Door Corporation, a manufacturer of garage doors, for Jonlon's injuries which resulted when Jonlon was pinned underneath a garage door manufactured by defendant. Plaintiff appeals the judgment entered upon a jury verdict in favor of defendant, contending

that the trial court erred (1) in excluding an insurance adjuster's report pertaining to installation and service records for the garage door, (2) in excluding evidence of warnings adopted by defendant several years before the injury, (3) in refusing his tendered jury instructions, and (4) in failing to grant a new trial based on defense counsel's misconduct. We reverse and remand for a new trial.

The record discloses the following events. Jonlon, age five, and her family moved to their new home on January 24, 1978. Two days after moving into their house, at about 11:30 a.m., Jonlon's mother permitted Jonlon to go outside to play with a neighbor boy who lived three houses away.

The Sorensons resided two houses away from the Downings. Around noon, Mrs. Sorenson left her home in her car to run an errand, and left her garage door open. The Sorensons had an R80Z type electric garage door opener, manufactured by Overhead Door. The operating pushbutton switch for the door was located well within a child's reach inside the garage. When Mrs. Sorenson returned, some 15 minutes later, she discovered that her garage door had closed partially, pinning Jonlon underneath. Jonlon was lying on her stomach, with her upper body outside the garage and her lower body inside.

Jonlon was hospitalized for one month. She sustained permanent brain damage as a result of the incident, and missed one year of school. She now requires extensive special education assistance and has noticeable speech and physical defects.

Plaintiff contends that Jonlon mistook the opener pushbutton for a doorbell, activated the garage door herself, and that the garage door caught her as she was running out of the garage and it failed to spring back, thus pinning her underneath. It is undisputed that, until 1973, Overhead Door failed to warn consumers of the potential consequences and dangers associated with installing the garage door's operating button within a child's reach. It is further undisputed that plaintiff provided such warnings for its new units manufactured between 1973 and 1978, but homeowners or distributors who had purchased or installed the units prior to 1973 were not warned.

The pushbutton which activated the garage door opener was designed as a door bell look-alike and was installed in the location where a door bell would normally be installed, approximately four feet from the floor. The instruction manual, after 1973, contained a notice stating, "Button should be out of reach of children." Additionally, a decal was included which stated: "Caution, operate door only when fully visible, properly adjusted, and free of obstructions. Do not permit children to play in area of door. See instruction manual for proper operation."

### I.

Plaintiff first contends that the trial court improperly excluded as hearsay the "Investigative Report" of the Sorensons' insurance adjuster. The report contained the dates of door maintenance, and a description of problems experienced with the door. It also listed the year of installation of the opener, 1969, which was relevant to the presumption of adequacy after ten years of use. The adjuster made notes during a telephone conversation occurring shortly after Jonlon's accident with the manager of Overhead Door of Denver, an independent distributor and service outlet for defendant. The conversation concerned the installation and service records for the Sorensons' garage door and R80Z openers in general. These service records were later destroyed and were unavailable at trial. Plaintiff argues that the adjuster's report, based on his notes from the phone conversation, was admissible under CRE 803(6), the business records exception. We agree.

■ Relevant and material business records qualify for the business records exception when supported by an adequate foundation showing that: (1) the records were made in the regular course of business; (2) those participating in the record

making were acting in the routine of business; (3) the input procedures were accurate; (4) the entries were made within a reasonable time after the occurrence in question; and (5) the information was transmitted by a reliable person with knowledge of the event reported. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984).

■ The reliability of such a record is demonstrated by evidence of its having been made pursuant to established and routine company procedures for the systematic conduct of its business. *Teac Corporation of America v. Bauer*, 678 P.2d 3 (Colo.App. 1984).

■ The records of Overhead Door of Denver were filed by street address and each file contained all copies of installation and service invoices for the garage door located at that address. The manager of Overhead Door of Denver testified that he read the file for the Sorensons' garage door to the adjuster during their telephone conversation.

The adjuster's report which resulted from that conversation was prepared as part of the normal routine business practice necessary for each insurance file. The adjuster prepared the report using information he received from one in knowledge, the agent for Overhead Door of Denver. This report was prepared within a relatively brief time after the telephone conversation. *See Herman v. Steamboat Springs Super 8 Motel, Inc.*, 634 P.2d 1005 (Colo.App. 1981).

While defendant claims the report is prejudicial and self-serving, it has failed to show anything untrustworthy about the preparation, storage, or use of the report. *Ford v. Board of County Commissioners*, 677 P.2d 358 (Colo.App.1983); *see* CRE 803(6). Thus, since the report is, in effect, a written memorial of installation and service records, prepared by the insurance agent from information obtained from the servicer, and was done in the regular course of business, we conclude that the

trial court erred in refusing to admit the report pursuant to CRE 803(6).

## II.

Plaintiff further contends that the trial court erred as a matter of law in instructing the jury, pursuant to § 13–21–403(3), C.R.S. (1984 Cum.Supp.) that:

"[t]en years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate."

Plaintiff argues that the jury lacked sufficient evidence concerning the sale date of the Sorensons' garage opener, and therefore, it could not reasonably conclude that the product was not defective. We agree.

■ Where a jury instruction fairly presents the issues and is supported by the evidence, the parties are entitled to have it given. *See Anderson v. Munoz*, 159 Colo. 229, 411 P.2d 4 (1966). However, *CJI–Civ.2d* 14:24 (1980) (Notes on Use) cautions that the instruction is proper:

"if there is sufficient evidence of the basic facts on which the presumption stated in this instruction is applicable in any case where damages for injury, death or property damage are claimed to have been the result of breach of warranty, strict liability in tort, or the manufacturer's or seller's being negligent."

■ Defendant contends that there was sufficient evidence presented to permit the instruction to be given and that it was for the jury to decide when the garage door opener was first sold. We agree that this constitutes a question of fact for the jury; however, the jury did not have evidence with which to make such a conclusion. According to the presumption, an injury complained of must have occurred within ten years of the date the product was first sold for use or consumption. That ten-year period runs from the sale of the individual product or item which causes the personal injury, death, or property damage, not

from the first sale of the particular model to the public, as defendant contends.

■ Jonlon was injured on January 26, 1978. The evidence disclosed that defendant began manufacturing R80Z Overhead Door Openers in October 1967. Testimony was also given that according to its serial number, the garage door opener in this case was allegedly manufactured on September 26, 1968. Only installers sold R80Z openers, and the records concerning sale and installation dates for the Sorensons' garage door opener had been destroyed before trial. The trial court refused to allow the insurance adjuster's report, which contained the date of installation, into evidence.

Thus, the jury was without sufficient evidence reasonably to conclude, by a preponderance of the evidence, that the basic facts giving rise ·to the presumption existed. Accordingly, it was error to instruct the jury concerning this presumption.

### III.

Plaintiff next contends that the trial court improperly excluded evidence that, beginning in 1973, defendant added warnings concerning placement of the pushbuttons for its garage door openers. Plaintiff asserts that, while these warnings were adopted subsequent to the installation of the Sorensons' R80Z opener, this pre-accident evidence was admissible to show that defendant had breached its duty to warn by failing to provide similar warnings to the Sorensons and other consumers who purchased R80Z operators prior to the time defendant first issued its warnings in 1973. We agree.

Section 13–21–404, C.R.S. (1984 Cum. Supp.), provides that:

"[I]n any product liability action, evidence of any scientific advancements in technical or other knowledge or techniques, or in design theory or philosophy, or in manufacturing or testing knowledge, techniques, or processes, or in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose *other than to show a duty to warn.*" (emphasis added)

Defendant urges that the duty to warn is a concept that has its origin in negligence, not strict liability, and that plaintiff is thereby precluded from asserting an argument concerning defendant's duty to warn under a strict liability theory. This argument was rejected in *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975) and *Hamilton v. Hardy*, 37 Colo. App. 375, 549 P.2d 1099 (1976).

■ The difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether, under an objective standard, after weighing the relevant costs and benefits, a warning was required. *Finn v. G.D. Searle & Co.*, 35 Cal.3d 691, 200 Cal.Rptr. 870, 677 P.2d 1147 (1984).

The manufacturer must give both adequate directions to assure effective use and adequate warning of potential danger to assure safe use. Providing instructions for the safe use or installation of the product is not a functional equivalent or appropriate substitute for adequate warnings of danger that might be encountered if the instructions given are not followed. *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (1983). Here, the test for defect is whether some feature of the installation, *i.e.*, whether the materials used or the manner of installation itself threatened harm to persons using the item. *See Southwestern Bell Telephone Co. v. Griffith*, 575 S.W.2d 92 (Tex.Civ.App.1978). While the installation instructions contained detailed descriptions of where and how to install the operator and mounting brackets, they do not contain *any* instructions regarding installation of the pushbutton. Thus, providing

instructions for the installation of the product which lack detail or specificity is no substitute for adequate warnings of the dangers possible where misuse may have disastrous results. *Brown v. Sears, Roebuck & Co., supra.*

 We have previously held that evidence of pre-accident remedial measures is admissible to demonstrate a defendant's pre-existing knowledge of the danger inherent in the product, the feasibility of giving a warning, and the existence of a duty to warn users of the defect. *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977). The need for such a warning is determined by the nature of the product. Thus, where a manufacturer or supplier of a product is, or should have been, aware that a product is unreasonably dangerous absent a warning, and such warning is feasible, strict liability in tort attaches if an appropriate and conspicuous warning is not given. *Burke v. Almaden Vineyards, Inc.*, 86 Cal.App.3d 768, 150 Cal.Rptr. 419 (1978). A failure to comply with the duty to warn adequately of potentially dangerous propensities may itself constitute a defect in the product. *Hiigel v. General Motors Corp., supra; Bailey v. Montgomery Ward & Co.*, 690 P.2d 1280 (Colo.App. 1984).

 Defendant concedes that there is a duty to warn of dangerous conditions, but argues that such a duty exists only in regard to those products not yet sold. In our view, defendant's argument construes the statute too narrowly.

The requirement for a warning, or the adequacy of a warning if one is given, is determined by taking into consideration the likelihood of accident and the seriousness of the consequences of a failure to warn. *Kysor Industrial Corp. v. Frazier*, 642 P.2d 908, 22 A.L.R. 4th 195 (Colo.1982). The duty to warn exists where a danger concerning the product becomes known to the manufacturer subsequent to the sale and delivery of the product, even though it was not known at the time of the sale. R. Hursh, *American Law of Products Liability* § 8:9 (1974).

██ After a product involving human safety has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy such defects, or, if a complete remedy is not feasible, to give users adequate warnings and instructions concerning methods for minimizing danger. *Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 411 F.2d 451 (2d Cir.1969), *cert. denied*, 396 U.S. 959, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); *Noel v. United Aircraft Corp.*, 342 F.2d 232 (3rd Cir.1965).

 In products liability actions it is often the case that remedial measures are taken after the manufacture and sale of a product but prior to an accident. While evidence of these subsequent repairs is generally inadmissible to prove negligence, *Barnes v. Safeway Stores, Inc.*, 30 Colo. App. 281, 493 P.2d 687 (1971), this principle is not applicable in a products liability context. *Martinez v. Atlas Bolt & Screw Co.*, 636 P.2d 1287 (Colo.App.1981); L. Frumer & M. Friedman, *Products Liability* § 12.04[2] (1984).

The Massachusetts Supreme Judicial Court, in *do Canto v. Ametek, Inc.*, 367 Mass. 776, 328 N.E.2d 873 (1975) permitted evidence of safety features developed by the manufacturer after the sale of a commercial ironer but before an accident. The court distinguished between post-accident repairs and pre-accident improvements, deciding that pre-accident safety improvements are admissible to show the feasibility of new safety features; to show knowledge of the safety features; and to establish the manufacturer's duty to warn of a deficiency in the safety feature of the product as sold.

The court reasoned that:

"Although the admissibility of evidence of post-accident improvements may tend to discourage the making of safety improvements for fear that the fact will be used against the defendant, improvements made before an accident are not discouraged similarly."

This rationale is applicable to the facts of this case.

Here, evidence of the subsequent warning would have directly supported a reasonable, logical, and natural inference that a hazard existed which was not obvious and which created an unreasonable risk of harm in the absence of warning. *See Burke v. Almaden Vineyards, Inc., supra.* The warning decal was prepared and distributed with new units prior to Jonlon's accident. This evidence was probative of defendant's pre-accident knowledge of the danger inherent in the product, and the feasibility of giving a warning to make the product less dangerous to use. *See Bartlett v. General Electric Co.*, 90 A.D.2d 183, 457 N.Y.S.2d 628 (1982). Since a factual basis existed for submitting the case to the jury under a failure to warn theory, the trial court's refusal to do so was error.

### IV.

Finally, plaintiff contends that the trial court erred in denying his motion for a mistrial which was based on several comments made by defense counsel during closing argument. In light of our disposition on other issues, we choose not to determine whether defense counsel's improper and inappropriate remarks constitute a separate basis for reversal.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

KELLY and TURSI, JJ., concur.