**Adrienne BIRCH, b/n/f William and Kenna Birch, and William and Kenna Birch, Individually, Appellants–Plaintiffs,**

v.

**MIDWEST GARAGE DOOR SYSTEMS and J. Robinson Homes, Appellees–Defendants.**

No. 41A04–0205–CV–232.

Court of Appeals of Indiana.

June 23, 2003.

James R. Fisher, Debra H. Miller, Fred R. Biesecker, Ice Miller, Indianapolis, IN, Attorneys for Appellants.

Alan A. Bouwkamp, Stephen C. Wheeler, Thomas R. Haley III, Jennings Taylor Wheeler & Bouwkamp, Carmel, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

William and Kenna Birch, individually and as next friend to Adrienne Birch, and Adrienne Birch (collectively, the "Birches"), appeal the trial court's grant of summary judgment to J. Robinson Homes ("Robinson") and Midwest Garage Door Systems ("Midwest"). The Birches raise two issues, which we restate as:

I. Whether the trial court erred by granting Robinson's motion for summary judgment under Section 388 of the Restatement (Second) of Torts; and

II. Whether the trial court erred by granting Midwest's motion for summary judgment because the garage door opener it installed was defective under the Indiana Product Liability Act.

We affirm.

The relevant designated facts follow. The Birches purchased a house from Robinson, a general contractor that builds and sells homes. On April 3, 1993, Midwest, a supplier of garage doors and garage door openers, on request of Robinson, installed an automatic garage door opener system in the home that Robinson was building for the Birches. Robinson had not specified which of the two types of safety features that it wanted installed in the Birches' garage door opener system. One of the two safety features was an impact/rebound type designed to prevent injury from a closing garage door by causing the door to stop closing and to open when the lower edge of the door made contact with an object such as a person. The other safety feature was an optical sensor type designed not to close or to stop closing and to open when an electric beam, located across the bottom of the door opening, was interrupted by any object. The optical sensor system is in addition to the impact/rebound system. The feature chosen by Midwest to install on the Birch home was the impact/rebound type only.

Prior to the installation of the automatic door opener system in the Birch home and effective January 1, 1993, the Consumer Product Safety Commission (CPSC) issued a Federal Residential Garage Door Opener Safety Requirement ("Federal Safety Requirement") that required manufacturers of garage door openers to incorporate in the garage door opener system an optical sensor and/or a Door Edge Sensor as a standard feature. Under the Federal Safety Requirement, manufacturers were permitted to continue to sell from inventories of door opening systems built before January 1, 1993, door closing systems without optical sensors, provided that those systems complied with the "Safety Entrapment standard of UL–325 dating May 4, 1988." Appellant's Appendix at 137. At some point prior to the installation of the garage door opener system in the Birch home, Midwest sent to Robinson what it designated as an "IMPORTANT SAFETY NOTICE" advising Robinson of the new Federal Safety Requirement and informing Robinson that Midwest could provide to Robinson either the "new Opener with the Optical Sensor" or the "UL–325 Opener" until the existing stock of UL–325 openers was gone. *Id.* Midwest estimated that the stock of UL–325 openers would be gone by March 1, 1993.

Neither Midwest nor Robinson informed the Birches of the Federal Safety Require-

ment that would prevent the manufacture of garage door opener systems without optical sensors after January 1, 1993, or that, until Midwest's stock of UL–325 impact/rebound safety systems was exhausted, the Birches could choose to purchase either a UL–325 system or an Optical Sensor system.[1] From the record, it appears that the Birches had no part in selecting the safety system installed with their garage door opener system.

Mr. Birch was provided with a manual as part of the installation process that contained information about the garage door system and the need to test and maintain the impact/rebound safety system. The manual also indicated the availability of an optical sensor safety system and strongly recommended use of such a system by a family with children. Both Mr. and Mrs. Birch were familiar with garage door systems incorporating the impact/rebound safety system. They warned their daughter Adrienne of the hazards of such doors and specifically warned her not to pass under the door when it was closing. Mr. Birch, at some point, installed a control switch outside the garage, so the door could be manually activated from inside or outside of the garage. Mr. Birch also became aware of the availability of optical sensors as an alternative to impact/rebound safety systems, but did not have such a system installed on their garage door opener system.

On May 12, 1998, some five years after installation of the door system and nearly five months after Midwest had made some repairs to the door system, Adrienne sustained serious injuries when the door of the garage closed down on her while she was lying in its path. Precisely how she came to be there while the door was closing is not known. The last she recalls before the accident is that she had put on her in-line skates inside the garage with the intent to go outside skating. Adrienne apparently fell in the process and the door came down on her. It did not rebound when it contacted her, but pressed down on her and caused serious injuries.

The Birches filed a complaint against Robinson, Midwest, Chamberlain Group, and Windsor Door.[2] The Birches' claim against Robinson is that, under the principles of Section 388 of the Restatement (Second) of Torts, Robinson had a duty to warn or inform the Birches that the Federal Safety Requirement had made the manufacture of garage door opener systems without optical sensors safety systems after January 1, 1993, illegal, and that such systems were dangerous.[3] The Birches' claim against Midwest is that Midwest is liable under the Indiana Product Liability Act[4] because the garage door opener system without optical sensors is defective as unreasonably dangerous and that Midwest, because of its knowledge of the defect in the garage door opener system, is liable as a manufacturer under the

---

1. None of the parties specifically address whether the system installed in the Birch home complied with the safety entrapment standard of UL–325. The overall implication from what is before us is that it did.

2. Chamberlain Group manufactured the garage door opener and Windsor Door manufactured a spring on the garage door. However, Robinson and Midwest are the only active parties to this appeal.

3. In their complaint, the Birches also alleged that Robinson breached an implied warranty of habitability and the warranty of fitness for a particular purpose. In response, Robinson filed its first motion for summary judgment, which the trial court granted as to the Birches' breach of warranty claims only.

4. Ind.Code §§ 34–20–1–1–4.

law.[5] Robinson counters that the Birches were aware of the dangers of the system and of the availability of optical sensors, and that Robinson had reason to believe the Birches realized any dangerous condition and, therefore, had no duty to warn them. Midwest counters that the garage door opener system with an impact/rebound safety was not defective and that Midwest was not the manufacturer of the system and, thus, has no liability to the Birches. The trial court granted Robinson's motion for summary judgment, with respect to the Birches' negligence claim, finding that Robinson owed no duty to the Birches because "[t]he designated evidence demonstrates that the [Birches] were aware of the very condition they allege made the garage door opening system dangerous." *Id.* at 39. The trial court also granted Midwest's motion for summary judgment with respect to the Birches' claims made pursuant to the Indiana Product Liability Act.

■ The Birches argue that the trial court erroneously granted summary judgments to Robinson and Midwest. On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbet-*

*ter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

■ Where a trial court enters findings of fact and conclusions thereon in granting the motion for summary judgment, as the trial court did in this case as to Robinson, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

## I.

The first issue is whether the trial court erred by granting Robinson's motion for summary judgment under Section 388 of the Restatement (Second) of Torts. The Birches argue that Robinson had a duty to warn them under the Restatement (Second) of Torts Section 388, which im-

5. The Birches also complained that Midwest was negligent for installing an obsolete garage door opener in their home. This claim ultimately proceeded to trial and the jury returned a verdict in favor of Midwest. The Birches do not appeal the jury verdict.

poses liability on a supplier of goods known to be dangerous for an intended use when it does not use reasonable care to inform the consumer of the facts that make the chattel dangerous. Our supreme court has adopted the Restatement (Second) of Torts Section 388 to be used when determining whether a supplier of a dangerous chattel has a duty to inspect, discover, and warn the borrower. *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243, 1245 (Ind.1997) (holding that "[w]hen the alleged negligence is the supplying of a defective chattel that causes injury, the appropriate considerations are better reflected in Sections 388 and 392 of the Restatement (Second) of Torts"), *reh'g denied.*

Section 388 of the Restatement (Second) of Torts provides, in pertinent part, that:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Here, there is no dispute as to whether Robinson knew that garage door openers are likely to be dangerous, i.e., Section 388(a), or whether Robinson failed to exer- cise reasonable care to inform the Birches of the dangerous condition of the garage door opener system, i.e., Section 388(c). Rather, the focus of our inquiry is whether Robinson had no reason to believe that the Birches would realize the dangerous condition of the garage door opener, i.e., Section 388(b).

 The Birches contend that genuine issues of material fact exist regarding whether Robinson had reason to believe that the Birches would realize the dangers associated with their garage door opener and that the trial court, therefore, erred in finding that no duty existed as a matter of law. To recover under a theory of negligence, a plaintiff must establish that: (1) the defendant owed the plaintiff a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach of that duty proximately caused an injury to the plaintiff. *Foxworthy v. Heartland Co–Op, Inc.*, 750 N.E.2d 438, 441 (Ind.Ct.App.2001), *trans. denied.* Indeed, "[a]bsent a duty, there can be no breach and, therefore, no recovery in negligence." *Id.* (citations omitted). Whether the defendant owed the plaintiff a duty is a pure question of law for the court to decide. *Id.* Factual questions, however, may be interwoven in the issue of duty, which render the existence of a duty a mixed question of law and fact to be determined by the factfinder. *Jacques v. Allied Bldg. Servs. of Ind., Inc.*, 717 N.E.2d 606, 608 (Ind.Ct. App.1999).

In the present case, the trial court granted Robinson summary judgment because:

[t]he undisputed designated evidence shows that [Robinson] had reason to believe that the [Birches] would realize the alleged dangerous condition of the

rebound safety function. The designated evidence demonstrates that the [Birches] were aware of the very condition that they allege made the garage door opening system dangerous.... As such, [Robinson,] as a matter of law, owed no duty to the [Birches] under Section 388(b).

Appellant's Appendix at 39. The Birches contend that the mere fact that they knew that their garage door opener system contained only the impact/rebound safety device and that they knew about the existence of optical sensors is insufficient to support the trial court's finding that Robinson did not owe them a duty. The Birches maintain that the "trial court misapplied the principles set forth in Section 388(b) of the *Restatement (Second) of Torts* when it treated [their] knowledge that their garage door opener lacked optical sensors as the equivalent of knowledge that the reversing mechanism which they did have was dangerous." Appellant's Brief at 5 (emphasis in original). Instead, the Birches argue, the proper inquiry under section 388 is "whether Robinson had reason to believe that the Birches would realize the dangerous condition posed by their garage door opener equipped with a reversing mechanism only." *Id.* The Birches further insist that because they had no knowledge of the Federal Safety Requirement prohibiting the manufacture of garage door openers without optical sensors as a standard feature, and because there was no evidence that they knew about previous accidents where garage door openers with reversing mechanisms failed to reverse properly and pinned children underneath, "[t]he jury should have been allowed to decide whether Robinson had reason to believe that the Birches would realize the garage door opener's dangerous condition." Appellant's Brief at 6. Robinson responds that the relevant analysis under section 388(b) is whether Robinson could reasonably believe that the Birches would realize the dangers associated with a garage door opener.

The designated evidence clearly indicates that Robinson had reason to believe that the Birches would realize the potential dangers related to their garage door opener. In particular, the designated evidence reveals that the Birches knew that their garage door opener contained the impact/rebound safety device only. The evidence further reveals that, prior to Adrienne's accident, the Birches became aware of the existence of the optical sensor safety device. Moreover, the designated evidence demonstrates that the Birches received the instruction manual for the garage door system and that Mr. Birch "breezed" through it after he had moved into the home. The garage door manual contains many important safety rules and provides that "Failure to comply with the following instructions may result in serious personal injury or property damage." Appellant's Appendix at 140. The manual advises the homeowner about the operation of the garage door opener system:

HOW THE DOOR MOVES WHEN THE OPENER IS ACTIVATED:

1. If open, the door will close. If closed, the door will open.

2. If closing, the door will reverse.

3. If opening, the door will stop (allowing space for entry and exit of pets and for fresh air).

4. If the door has been stopped in a partially open position, it will close.

5. If an obstruction is encountered while closing, the door will reverse.

6. If an obstruction is encountered while opening, the door will stop.

*Id.* at 160 (emphasis in original). In addition, under the heading, "Features of Your Opener," the manual provides as follows: "Safety System: Independent up and

down force adjustment. The door RE-VERSES automatically when obstructed in DOWN direction. The door STOPS when obstructed in the UP direction." *Id.* at 141 (emphasis in original).

The garage door opener manual also gives the homeowner instructions on caring for the opener. Specifically, the manual provides:

LIMIT AND FORCE ADJUST-MENTS: These adjustments must be checked and properly set when opener is installed. Only a screwdriver is required. Pages 20 and 21 refer to the limit and force adjustments. Follow the instructions carefully.

REPEAT THE SAFETY REVERSE TEST AFTER ANY ADJUSTMENT. Weather conditions may cause some minor changes in the door operation, requiring some readjustments, particularly during the first year of operation.

THE SAFETY REVERSE SYSTEM IS IMPORTANT (SEE Pg. 22). GARAGE DOOR *MUST* REVERSE ON CON-TACT WITH A 1-INCH OBSTACLE PLACED ON THE FLOOR. FAIL-URE TO PROPERLY ADJUST OPEN-ER MAY RESULT IN SERIOUS PERSONAL INJURY FROM A CLOS-ING GARAGE DOOR.

*Id.* at 145 (emphasis in original). The manual explains that:

Force Adjustment Controls are located on rear panel of opener. FORCE AD-JUSTMENT settings regulate amount of the power required to open and close door.

\* \* \* \* \*

DO NOT USE FORCE ADJUST-MENTS TO COMPENSATE FOR A BINDING OR STICKING GARAGE DOOR. EXCESSIVE FORCE WILL INTERFERE WITH THE PROPER OPERATION OF THE SAFETY RE-

VERSE SYSTEM OR DAMAGE THE GARAGE DOOR.

*Id.* at 159 (emphasis in original). The manual describes in detail how to adjust the force on the garage door opener. *Id.*

The garage door opener manual also warns that:

DO NOT USE THE FORCE ADJUST-MENTS TO COMPENSATE FOR A BINDING OR STICKING GARAGE DOOR. Excessive force will interfere with the proper operation of the safety reverse system or damage the garage door. . . .

THE SAFETY REVERSE SYSTEM TEST IS VERY IMPORTANT. Your garage door *MUST* reverse on contact with a 1-inch obstacle placed on the floor. Failure to properly adjust the opener may result in serious personal injury from a closing garage door. RE-PEAT THE TEST ONCE A MONTH AND MAKE ANY NEEDED ADJUST-MENTS.

\* \* \* \* \*

Install the door control button (or any additional push buttons) IN A LOCA-TION WHERE THE GARAGE DOOR IS VISIBLE, BUT OUT OF THE REACH OF CHILDREN. DO NOT ALLOW CHILDREN TO OPERATE THE PUSH BUTTON(S) OR RE-MOTE CONTROL TRANSMITTER. Serious personal injury from a closing garage door may result from misuse of the opener.

CAUTION: Activate opener only when the door is in full view, free of obstructions and opener is properly adjusted. NO ONE SHOULD ENTER OR LEAVE THE GARAGE WHILE DOOR IS IN MOTION. DO NOT AL-LOW CHILDREN TO PLAY NEAR THE DOOR.

*Id.* at 140 (emphasis in original and internal citations omitted).

Under the heading, "Maintenance of your opener," the manual provides, in part, as follows:

### ONCE A MONTH

MANUALLY OPERATE DOOR. If it is unbalanced or binding, call for professional garage door service.

CHECK TO BE SURE DOOR OPENS & CLOSES FULLY. Adjust Limits and/or Force if necessary.

REPEAT SAFETY REVERSE TEST. Make any necessary adjustments (See Page 22).

*Id.* at 145 (emphasis in original).

In another section of the manual describing accessories available for the garage door opener system, the manual provides:

"The Protector System"

Provides auxiliary support to the safety features built into your opener. The system's invisible beam, when broken by an obstruction, causes a closing door to open and prevents an open door from closing. Strongly recommended for homeowners with young children.

*Id.* at 142. At another place of the manual, this same optional protector system is mentioned and is, again, "STRONGLY RECOMMENDED for homeowners with young children." *Id.* at 144 (emphasis in original). Similarly, in discussing the optical sensor safety device, the manual explains that:

THE PROTECTOR SYSTEM PROVIDES AN ADDITIONAL MEASURE OF SAFETY AGAINST A SMALL CHILD BEING CAUGHT UNDER A GARAGE DOOR. It uses an invisible beam which, when broken by an obstruction, causes a closing door to open and prevents an open door from closing.

STRONGLY RECOMMENDED FOR HOMEOWNERS WITH CHILDREN.

*Id.* at 160 (emphasis in original).

The manual further contains many warnings to homeowners with children. For example, it warns parents not to "PERMIT CHILDREN TO PLAY IN DOOR AREA." *Id.* (emphasis in original). The manual also provides a warning to: "LOCATE DOOR CONTROL BUTTON (OR ANY ADDITIONAL PUSH BUTTONS) WHERE THE GARAGE DOOR IS VISIBLE, AWAY FROM THE DOOR AND DOOR HARDWARE AND OUT OF THE REACH OF CHILDREN," and that: "SERIOUS PERSONAL INJURY FROM A MOVING GARAGE DOOR MAY RESULT FROM MISUSE OF OPENER. DO NOT ALLOW CHILDREN TO OPERATE DOOR CONTROL BUTTON(S) OR REMOTE CONTROL TRANSMITTER." *Id.* at 152 (emphasis in original).

Moreover, the manual cautions that:

Children operating or playing with a garage door opener can injure themselves or others. *The garage door could close and cause serious injury or death.* Do not allow children to operate the door control(s) or remote control transmitter(s).

*A moving garage door could injure or kill someone under It.* Activate the opener only when you can see the door clearly, It is free of obstructions, and is properly adjusted.

*Id.* at 161 (emphasis in original).

Toward the end of the manual, the manual matches hypothetical situations with their probable causes and solutions. One such situation is "The door doesn't open completely:" *Id.* at 162. The listed probable causes and solutions for this situation are:

1. Is something obstructing the door?

2. If door opens at least 5 feet, the travel limits may need to be increased....

 *Repeat the safety reverse test after the adjustment is complete.*

3. If the door has been working properly but now doesn't open all the way, increase the *up force.*

 *Repeat the safety reverse test after the adjustment is complete.*

*Id.* (emphasis in original). Another situation listed is: "The door doesn't close completely." For this situation, the probable causes and solutions are:

1. Is something obstructing the door?

2. Review the travel limits adjustment chart on page 20.

 *Repeat the safety reverse test after any adjustment of door arm length, close force or down limit.*

*Id.* (emphasis in original). Another condition specified is when "The door reverses for no apparent reason." The probable causes and solutions listed in the manual are:

1. Is something obstructing the door? Pull the red manual release handle. Operate the door manually. If it is unbalanced or binding, call a garage door serviceman to correct the problem.

2. Clear any ice or snow from the garage floor area where the door closes.

3. Review the force adjustment chart on page 21.

 *Repeat the safety reverse test after the adjustment is complete.*

4. If door reverses in the *fully closed* position, decrease the travel limits (page 20).

 *Repeat safety reverse test after the adjustment is complete. The need for occasional adjustment of the force and limit settings is normal. Weath-er conditions in particular can affect door travel.*

5. Check the Protector System (if you have installed this accessory). If the light is blinking, correct alignment.

*Id.* at 163 (emphasis in original). Another situation is that: "The opener motor hums briefly, then won't work." The probable causes and solutions are as follows:

1. The garage door springs are broken....

2. The trolley may be jammed into the stop bolts. Push or pull on the door while the motor is humming to release the jammed condition. Re-adjust the door limits (page 20) to prevent overtravel.

 *Repeat the safety reverse test after the adjustment is complete.*

3. If the problem occurs on the first operation of the opener, door may be locked. *Disable the door lock.* If the chain was removed and reinstalled, the motor may be out of phase. Remove the chain; cycle the motor to the down position. Observe the drive sprocket. When it turns in a clockwise direction and stops in the down position, reinstall the chain.

 *Repeat the safety reverse test after the adjustment is complete.*

*Id.* at 163 (emphasis in original).

The garage door opener manual, which Mr. Birch "breezed" through, clearly expressed the potential dangers associated with the Birches' garage door opener. The manual not only contained several warnings to parents regarding specific dangers to children, but it also "STRONGLY RECOMMENDED" that parents install optical sensors on the garage door opener. Thus, the evidence indicates that Robinson had reason to believe that the Birches would realize the potential dangerousness of their garage door opener. *See,*

*e.g., Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1209 (Ind.Ct. App.1998), *questioned on other grounds by City of Gary v. Smith & Wesson Corp.*, 776 N.E.2d 368, 385 n. 13 (Ind.Ct.App.2002). As such, Robinson did not owe the Birches a duty to warn them of potential hazards associated with their garage door opener. Therefore, pursuant to section 388(b) of the Restatement (Second) of Torts, we conclude that Robinson had reason to believe that the Birches would realize the dangerous condition of the garage door opener.

■ Nevertheless, the Birches argue that the trial court erroneously granted summary judgment to Robinson under Section 388 because the dangerous condition, i.e., "the propensity of reversing mechanisms to fail to reverse a descending garage door after contact with an obstacle," was not open and obvious.[6] Appellant's Brief at 10. In the alternative, the Birches contend that even if the danger was open and obvious, Robinson as the supplier of the garage door system had special experience and knowledge regarding the dangers related to garage door openers such that it owed the Birches a duty to warn. In particular, the Birches assert that because Robinson had received the IMPORTANT SAFETY NOTICE explaining that the Federal Safety Requirement required the future manufacture of garage door openers to have optical sensors as a standard feature, prior to installing the garage door opener in dispute, it had a duty to warn the Birches of the danger associated with their UL 325 garage door opener.

To support this argument, the Birches rely upon *Downing v. Overhead Door Corp.*, 707 P.2d 1027 (Colo.Ct.App.1985).

There, a manufacturer of garage door openers sold a garage door opener with the activator button located within the reach of children. *Id.* at 1030. Upon realizing the danger associated with the button placement, the manufacturer began warning new purchasers of the danger. *Id.* However, it did not warn previous purchasers, such as the owners of the garage door that injured plaintiff's daughter, of the potential dangers of the button placement. *Id.* The *Downing* court held that the manufacturer had a duty to warn "where a danger concerning the product becomes known to the manufacturer subsequent to the sale and delivery of the product, even though it was not known at the time of the sale." *Id.* at 1033.

The present case is readily distinguishable from *Downing*. The garage door opener at issue in *Downing* contained a manufacturing defect, i.e., the dangerous placement of the activator button. Whereas, the Birches have failed to show that their garage door opener was defective at the time it was installed in their house. Instead, the only evidence that the Birches have designated with respect to the alleged defectiveness of their garage door opener was the change in federal safety regulations. However, a change in safety regulations requiring the future manufacture of garage door openers to have optical sensors as a standard feature does not, alone, render the Birches' garage door opener defective. Indeed, even with the change in federal safety requirements, the Birches' garage door opener could legally be sold without optical sensors as a standard feature because it was part of an existing stock of garage door openers manufactured prior to January 1, 1993. *See, e.g., Romero v. Int'l Harvester Co.*, 979

---

**6.** In their appellant's brief, the Birches have failed to cite any authority regarding their contention that the dangers associated with their garage door opener was not open and obvious. Accordingly, we do not address that issue.

F.2d 1444, 1450 (10th Cir.1992) ("We see nothing in *Downing* extending to manufacturers a duty to retrofit a product which was non-defective under standards existing at the time of manufacture, yet which could subsequently be made safer by a later-developed safety device or design improvement.") (applying Colorado law). We may speculate what the Birches would have done if they had been advised, as was known to Robinson and Midwest, that a change in federal regulations, i.e., the Federal Safety Requirement, required that door systems manufactured after January 1, 1993, incorporate an optical sensor safety feature, but that existing stocks of door systems manufactured before that date could be sold, provided that they met the standard of UL 325. However, that information would not have added any information about the dangerousness of the garage door opener system installed in their home. Consequently, Robinson did not have a duty to warn the Birches of the change in federal safety requirements. We conclude that liability is not established under Section 388, and the trial court did not err by granting summary judgment to Robinson on the Birches' claim of negligence.

## II.

■ The second issue is whether the trial court erred by granting Midwest's motion for summary judgment because the garage door opener it installed was defective under the Indiana Product Liability Act. In response to Midwest's motion for summary judgment, the trial court found that "[t]here is no genuine issue of material fact relative to [the Birches'] claims made pursuant to the Indiana Products Liability Act, including but not limited to, those claims relative to the presence of an optical sensor on [the Birches'] garage door system." Appellant's Appendix at 42. As both the Birches and Midwest

observe, however, the trial court did not explain its rationale behind this finding. As we previously mentioned, in the summary judgment context, the trial court is not required to enter specific findings and conclusions thereon. Although such findings and conclusions offer valuable insight into the trial court's rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

Here, the Birches contend that the trial court erroneously granted Midwest's motion for summary judgment because issues of fact exist "as to whether Midwest reasonably should have warned [them] that their garage door opener was no longer legal to manufacture for safety reasons." Appellant's Brief at 16. The Birches' claim against Midwest is premised upon the Indiana Product Liability Act ("Act"). Ind.Code § 34–20–1–1 defines the scope of the Act as governing all actions that are:

(1) brought by a user or consumer;

(2) against a manufacturer or seller; and

(3) for physical harm caused by a product;

regardless of the substantive legal theory or theories upon which the action is brought.

In addition, Ind.Code § 34–20–2–1, which governs a manufacturer's or seller's potential liability, provides in part:

Except as provided in section 3 of this chapter, a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user

or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

 Moreover, under the Act, the plaintiff must prove that the product was in a defective condition that rendered it unreasonably dangerous. *Smock Materials Handling Co., Inc. v. Kerr*, 719 N.E.2d 396, 402 (Ind.Ct.App.1999). "The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer." *Id.*

In the present case, the Birches contend that its claim against Midwest is governed by the Act because their garage door opener was defective when it was installed. Ind.Code § 34–20–4–1 provides that:

A product is in a defective condition under this article if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

Ind.Code § 34–6–2–146 defines "unreasonably dangerous" as "any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers." A product is also considered defective:

if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product;

when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

Ind.Code § 34–20–4–2.

 Here, the Birches argue that their garage door opener system was defective because of its design and of Midwest's failure to warn of the new federal regulations.[7] First, the Birches maintain that

---

7. Midwest argues that the Act does not apply to the case at bar because Midwest is not a manufacturer of garage door openers. Pursuant to the Act, a manufacturer is "a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Ind.Code § 34–6–2–77(a).

However, the term manufacturer also includes a seller who "has actual knowledge of a defect in a product." *Id.* The Birches contend that its claim against Midwest is governed by the Act because Midwest, the seller of the garage door opener in question, had actual knowledge of the manufacturing ban placed on garage door openers without optical sensors as a standard feature prior to the

the garage door system without optical sensors is in a defective condition unreasonably dangerous to the Birches within the meaning of our products liability law. If there was a dangerous condition of the door system installed in the Birch home, it was the danger of a system not equipped with an optical sensor safety feature, but only with an impact/rebound safety system. That danger is that the impact/rebound safety feature may not work as it is intended, if it is not consistently maintained by testing and adjustment of the down limit as needed. The garage door opener manual given to the Birches advised that such testing should be done every month. Yet, in the approximate four years that the garage door at issue here was in use, the only time the test was done was in December of 1997, when a Midwest employee did it after doing some repair to the door. Mr. and Mrs. Birch never did so.

The Birches also contend that the design of the reversing mechanism alone "was sufficiently defective that the federal government found it necessary to ban the manufacturing of openers without optical sensors." Appellant's Brief at 13. However, as we discussed above, the change in federal safety regulations, in and of itself, did not render the Birches' garage door opener defective. In fact, although the regulations required the future manufacture of all garage door opener systems to include optical sensors as a standard feature, they permitted sellers, such as Midwest, to continue to sell garage door openers that were in compliance with the prior regulations and had been manufactured prior to January 1, 1993, which did not have optical sensors, until such stock was exhausted.

installation of the Birches' garage door open-

The Birches next assert that genuine issues of material fact exist that their garage door opener was defective because Midwest failed to warn them "that their garage door opener was no longer legal to manufacture for safety reasons." Appellant's Brief at 16. Under the Act, a product may be deemed "defective" if it is not accompanied by appropriate warnings as to its dangerous characteristics and properties. Ind.Code § 33–1–1.5–2.5(b)(1). A party making a claim of liability must show that the defendant "failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." Ind.Code § 33–1–1.5–3. No additional warning must be furnished where such warnings would not add to the user's understanding of the characteristics of the product. *Shanks v. A.F.E. Indus., Inc.*, 275 Ind. 241, 249, 416 N.E.2d 833, 837 (1981).

Here, again, the designated evidence demonstrates that the Birches were aware that their garage door opener had a reversing mechanism only and did not contain optical sensors. The evidence further indicates that the Birches had received the instruction manual to the garage door opener and that Mr. Birch had "breezed" through it. The instruction manual contained numerous warnings regarding the potential risks associated with the Birches' garage door opener. Accordingly, there was no information about garage door openers that could have been provided by Midwest that would have added to the Birches' understanding of the characteristics of the product. *See, e.g., Downs,* 694 N.E.2d at 1212 (holding that a bulk supplier and a transporter of natural gas had no duty to warn the utility of the dangers associated with natural gas when the utility had actual knowledge of the dangers). As such, Midwest had no duty to warn the

er.

Birches of the changes in federal safety regulations regarding garage door openers. *See, e.g., id.* We conclude that Midwest is not liable under the Act and, thus, the trial court properly granted summary judgment to Midwest.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Robinson and its grant of summary judgment to Midwest.

Affirmed.

KIRSCH, J. concurs.

SULLIVAN, J. concurs with separate opinion.

SULLIVAN, Judge, concurring.

The summary judgment in favor of Robinson is premised upon the applicability of Section 388 of the Restatement (Second) of Torts. I fully agree that Restatement § 388 does not give rise to liability upon the part of Robinson and subscribe to the reasoning of the majority in reaching that result.

As to Midwest, however, I would respectfully submit an observation concerning our opinion with regard to the Indiana Products Liability Act. Our opinion in part reads as follows:

"The Birches also contend that the design of the reversing mechanism alone 'was sufficiently defective that the federal government found it necessary to ban the manufacturing of openers without optical sensors.' Appellant's Brief at 13. However, as we discussed above, the change in federal safety regulations, in and of itself, did not render the Birches' garage door opener defective. In fact, although the regulations required the future manufacture of all garage door opener systems to include optical sensors as a standard feature, they permitted sellers, such as Midwest, to continue to sell garage door openers that were in compliance with the prior regulations and had been manufactured prior to January 1, 1993, which did not have optical sensors, until such stock was exhausted." Op. at 518.

Our conclusion as set forth above should not be read to imply that Midwest could not be held liable for negligence in the matter. Notwithstanding the federal government's lenient directive concerning implementation of its safety standards and permitting manufacturers or suppliers to exhaust current inventories, such does not mean that a supplier who sells such doors in violation of the new safety regulations is, as a matter of law, free of any negligence. It would not be unreasonable for a trier of fact to conclude that the government's safety regulations placed the supplier on notice that the old doors were considered to be unsafe and that, notwithstanding the largesse of the government, to continue to sell and install such doors would be negligent conduct.

Be that as it may, this matter has been fully resolved by litigation. As noted in our opinion, and as crucial to our determination, the negligence claim against Midwest was tried to a jury which rendered a verdict in favor of Midwest. The Birches did not appeal this judgment.

I fully concur.